**AMOS TREAT & CO., Inc., et al.,
Appellants,**

v.

**SECURITIES AND EXCHANGE COM-
MISSION et al., Appellees.**

No. 17002.

United States Court of Appeals
District of Columbia Circuit.

Argued May 3, 1962.

Decided May 11, 1962.

Petition for Rehearing En Banc
Denied June 14, 1962.

Mr. James M. Landis, Washington, D. C., for appellants.

Mr. David Ferber, Associate Gen. Counsel, S.E.C., with whom Messrs. John A. Dudley and Michael Joseph, Attys., S. E.C., were on the pleadings, for appellees.

Before WILBUR K. MILLER, Chief Judge, and DANAHER, Circuit Judge.

DANAHER, Circuit Judge.

Appellant, Amos Treat & Co., Inc., is a New York corporation registered as a broker-dealer with the Securities and Exchange Commission under section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78o(b). Individual appellants, Treat and DeFelice, are respectively President and Secretary-Treasurer of Treat & Co. The Commission issued its order January 17, 1962 directing a pub-

lic hearing looking to the possible revocation or suspension of the broker-dealer registration of Treat & Co., its possible suspension or expulsion from the National Association of Securities Dealers, Inc., § 15A(l) (2), 15 U.S.C.A. § 78o–3 (l) (2), and a determination as to whether or not the individual co-plaintiffs should be named as "causes" of any such orders, in which event they would effectively be "debarred from continuing in the securities business." § 15A(b) (4), 15 U.S.C.A. § 78o–3(b) (4).

Alleging a denial of due process for reasons to be discussed, appellants in the District Court sought an order enjoining the Commission, its individual members, and its agents, *pendente lite,* and permanently from further prosecution of the revocation proceeding pending in the Commission's New York Regional Office and that the appellees be ordered to vacate and discontinue that proceeding. On April 30, 1962, relief was denied on the ground that appellants had failed to exhaust their administrative remedies since a final order had not been entered in the administrative proceeding, and on the further ground that, even should a final order be entered, review might be sought in this court pursuant to § 25 of the 1934 Act, 15 U.S.C.A. § 78y. On appeal that same day, this court stayed further proceedings pending our further order, and on May 3, 1962, the parties appeared and were heard at length.

■ Were we confronted simply with claims of procedural irregularity in the conduct of the proceedings before the Hearing Examiner and in the action of the Commission with respect thereto, we would be bound to dismiss the instant appeal. R. A. Holman & Co. v. Securities and Exchange Commission, 112 U.S.App. D.C. 43, 299 F.2d 127, cert. denied, 370 U.S. 911, 82 S.Ct. 1257, 8 L.Ed.2d 404; UNA Chapter, Flight Eng. I. Ass'n v. National Mediation Bd., 111 U.S. App.D.C. 121, 294 F.2d 905, 909 (1961), cert. denied, 368 U.S. 956, 82 S.Ct. 394, 7 L.Ed.2d 388 (1962). Here, however, we have a problem going quite beyond the ex parte communications be-

tween the staff and the Commission, and the ex parte Commission action with respect to certain rulings as to some of which, at least, applications for relief had not even then been made by the appellants. Ex parte representations by the Regional Administrator and the staff without notice to the appellants, serious enough in and of themselves, nevertheless might have developed not to be of a fundamental nature, and, upon the whole record, could have resulted in rulings which we would review in ultimate course after the entry of a final Commission order. Such irregularities, subject to review upon the whole record, would have provided no basis for action by the District Court, and lacking jurisdiction, its order would have been quite correct.

Here, however, we have a verified complaint, the allegations of which have not been controverted. Briefly summarized, the complaint alleges that on December 11, 1959, South Bay Industries, Inc. filed a registration statement, effective March 23, 1960, as to which Treat & Co. became managing underwriter and sold shares of South Bay stock to the public. About October 1960, the Commission's Division of Corporation Finance instituted an informal section 8(e) investigation [1] as to the circumstances and events concerning South Bay's registration statement. About April 1961, the Division of Corporation Finance reported information to the Commission on the basis of which the Commission ordered the institution of a formal examination and investigation. At the times mentioned, while the informal investigation was in process and when the formal examination was initiated, and during part of the time while it was conducted, Manuel F. Cohen was director of the Commission's Division of Corporation Finance "responsible to the Commission for the initiation, conduct and supervision" of the proceedings. October 11, 1961, Mr. Cohen became a member of the Commission. December 4, 1961, the investigation having been con-

cluded, the Commission acting on recommendations by its Division of Corporation Finance, instituted proceedings pursuant to section 8(d) of the Act, 15 U.S. C.A. § 77h(d) to suspend the effectiveness of the South Bay registration statement listing. Prosecution of that proceeding was assigned to the Commission's Division of Corporation Finance and is still pending.

The Commission on January 17, 1962 issued its order setting forth charges that Treat & Co. had wilfully violated the Act, and that the appellants had solicited persons to purchase the stock of South Bay Industries, Inc., and in doing so, had made false and misleading statements of material facts, and had omitted to set forth material facts known or which should have been known to the appellants. Similar allegations were made with respect to activities of the appellants concerning the stock of two other corporations.

A public hearing was ordered, and various rulings or actions by the Commission, it is alleged, had important impact on the proceedings before the Hearing Examiner. As of February 15, 1962, the Commission issued a ruling deemed critical by the appellants who thereupon sought information as to the identity of the Commissioners who had participated in its promulgation. They were informed that a "quorum consisting of three Commissioners had participated, and that Commissioner Cohen was one of the three." Appellants alleged that prior to that time they "had no knowledge that he was participating in, or intended to participate in, any of the quasi-judicial functions of the Commission relating to the revocation proceeding." Appellants thereupon sought permission of the Hearing Examiner to take appropriate steps with respect to "Commissioner Cohen's disqualification" and with respect to his participation in certain other matters involving questioned rulings. A recess was granted for that purpose.

---

1. The § 8(e) investigation, 15 U.S.C.A. § 77h(e) includes here §§ 8(e) and 20(a) of the Securities Act, 15 U.S.C.A. § 77t

(a) and § 21(a) of the Exchange Act, 15 U.S.C.A. § 78u(a).

Appellants moved that the Commission discontinue the revocation proceedings "by reason of Commissioner Cohen's unlawful participation and the unlawful ex parte communications between the Commission and the members of its staff engaged in the prosecution of the case." Appellants also sought full information as to the extent and nature and the number of instances of participation by Member Cohen with respect to the matters complained of.

The Commission granted oral argument as to the motion for discontinuance, and the alternative motion of the appellants that "an evidentiary hearing be held to determine whether any members of the Commission were disqualified with respect to past or future proceedings and the facts relating to the ex parte representations, so as to enable the Commission to then determine whether to grant a discontinuance."

On April 11, 1962, the Commission denied appellants' motion for a discontinuance and alternative motion for an opportunity to adduce further evidence on the facts, and ruled that "section 5(c) of the Administrative Procedure Act" does not apply to Commissioner Cohen since "he has now become an agency member." The Commission further ruled that Commissioner Cohen was not disqualified from participation in the revocation proceeding, but expressed its intention to honor Commissioner Cohen's stated "preference" not to participate in further proceedings.

Appended to the Commission's April 11, 1962 "minute" order was a written statement prepared by Commissioner Cohen outlining his recollection and conclusions with respect to the various proceedings which had been conducted while he was the director of the Division of Corporation Finance and stating the extent to which he had participated in the actions taken by the Commission.

Appellants alleged that participation by Commissioner Cohen had rendered the proceedings void and so irrevocably tainted that any final determination which might flow from such proceedings will be invalid. It is our view that a substantial showing has been made.

■ Just exactly how the concept of "due process" is to be applied will vary with the type of proceeding involved, as we are well aware.

"Its exact boundaries are undefinable, and its content varies according to specific factual contexts. Thus, when governmental agencies adjudicate or make binding determinations which directly affect the legal rights of individuals, it is imperative that those agencies use the procedures which have traditionally been associated with the judicial process." [2]

■ At the very least, quasi-judicial proceedings entail a fair trial. As the Supreme Court has said in other context:

"A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness.

\* \* \* \* \* \*

"It would be very strange if our system of law permitted a judge to act as a grand jury and then try the very persons accused as a result of his investigations. \* \* \* Having been a part of that process a judge cannot be, in the very nature of things, wholly disinterested in the conviction or acquittal of those accused. \* \* \* Fair trials are too important a part of our free society to let prosecuting judges be trial judges of the charges they prefer." [3]

2. Hannah v. Larche, 363 U.S. 420, 442, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960). The scope of the authority of the Securities and Exchange Commission in certain types of proceedings has been summarized in the appendix, 363 U.S. at 460–464, 80 S.Ct. 1502.

3. In re Murchison, 349 U.S. 133, 136–137, 75 S.Ct. 623, 99 L.Ed. 942 (1955).

■ Stated otherwise with respect to agency adjudicatory proceedings, due process might be said to mean at least "fair play."

"One of these essentials is the resolution of contested questions by an impartial and disintertested tribunal. These adjectives are not absolute but relative as every thoughtful person knows. Decisions affecting human beings, made by human beings, necessarily are colored by the sum total of the thoughts and emotions of those responsible for the decision. The judicial process, or any other human process, cannot operate in a vacuum. The most we can hope for is that persons charged with the responsibility for decisions affecting other people's lives and property will be as objective as humanly possible. Certain rules, of more or less definiteness, have been worked out through judicial decision by judges to regulate their own conduct. * * * [4] We conclude that in this case the facts, if proved, show a case which goes beyond the line of fair dealing with a particular litigant. If the circumstances alleged are proved Berkshire did not have a hearing before an impartial tribunal, but one in which one member of the body which made exceedingly important findings of fact had already thrown his weight on the other side. * * * It goes further and, in our judgment, it goes beyond that which is permissible from the standpoint of either litigants or public.

"The Board argues that at worst the evidence only shows that one member of the body making the adjudication was not in a position to judge impartially. We deem this answer insufficient. Litigants are entitled to an impartial tribunal whether it consists of one man or twenty and there is no way which we know of whereby the influence of one upon the others can be quantitatively measured." [5]

The principles thus stated underlay our opinion in Trans World Airlines v. Civil Aeronautics Board where one who had been Solicitor of the Post Office Department signed a brief to the Board in behalf of the Postmaster General and thereafter became a member of the Board. In that capacity he cast certain votes on a point at issue. We then said:

"It is plain that in this statute Congress contemplated an adjudicatory proceeding and conferred upon the Board in this respect quasi-judicial functions. The fundamental requirements of fairness in the performance of such functions require at least that one who participates in a case on behalf of any party, whether actively or merely formally by being on pleadings or briefs, take no part in the decision of that case by any tribunal on which he may thereafter sit. The order is vacated

4. And see 28 U.S.C. § 455 (1958): "Any justice or judge of the United States shall disqualify himself in any case in which he has a substantial interest, has been of counsel, is or has been a material witness, or is so related to or connected with any party or his attorney as to render it improper, in his opinion, for him to sit on the trial, appeal, or other proceeding therein."

The manifest purpose of the statute "is to require that the Circuit Court of Appeals be composed in every hearing of judges none of whom will be in the attitude of passing upon the propriety, scope or effect of any ruling of his own made in the progress of the cause in the court of first instance, and to this end the disqualification is made to arise, not only when the judge has tried or heard the whole cause in the court below, but also when he has tried or heard any question therein which it is the duty of the Circuit Court of Appeals to consider and pass upon." Rexford v. Brunswick-Balke Co., 228 U.S. 339, 343–344, 33 S.Ct. 515, 57 L.Ed. 864 (1913); United States v. Vasilick, 160 F.2d 631, 632 (3 Cir. 1947).

5. Berkshire Employees Ass'n, Etc. v. National Labor R. Bd., 121 F.2d 235, 238–239 (3 Cir. 1941).

and the case remanded to the Board for reconsideration." [6]

This was not a case where the petitioners had waited until the entire hearing had been held before they moved that a Board member be disqualified.[7] Nor is it a case where the agency had not been given an opportunity to pass in first instance upon the claimed disqualification of its own members.[8]

Here, the appellants had moved, at least alternatively, for an evidentiary hearing to develop the facts, some appreciation of the need for which may be gleaned from Commissioner Cohen's own statement of April 11, 1962. There, admittedly, he had participated for many months as director of the Division of Corporation Finance. Thereafter he participated as a member of the Commission.

The Commission would have us say that appellants' complaint on this score may be considered in an ultimate review of a final order. It is argued further that in any event the final clause of 5 U.S.C.A. § 1004(c) excludes Commissioner Cohen from the prohibition to be found in the earlier portion of the section. The language relied upon reads "nor shall it be applicable in any manner to the agency or any member or members of the body comprising the agency." We find no basis for that contention.

Nor is the fact that under other circumstances "irregularities" at the hearing level may ultimately be the subject of administrative review.[9] We are confronted by a situation where the asserted infirmity is fundamental. Quite apart from the ordinary review authority conferred by the Securities Exchange Act, the courts may "restrain the enforcement of an invalid administrative order * * *." [10] The right to be vindicated here is one which comes within the judicial function, as Chief Justice Hughes pointed out for a unanimous Court in Nelson Bros.

We find quite inadequate for dispositive purposes, the "minute" order of the Commission issued on April 11, 1962 with its attached statement by Commissioner Cohen. It is not enough that here no corruption has been charged, indeed appellants expressly disclaim personal bias and prejudice. What must control is the policy this court has previously applied and the principles, discernible from the cases and from the statute, that the investigative as well as the prosecuting arm of the agency must be kept separate from the decisional function.

Commissioner Cohen in his ex parte statement purports to speak to "the best" of his recollection with respect to the prospectus and the registration statement of South Bay and the memorandum prepared by his staff containing a statement of the facts uncovered during the preliminary investigation as a result of which areas of further inquiry were outlined. We, of course, can not go back of his statement—we have no other facts. His files revealed, he said, copies of "three brief memoranda of telephone conversations" by the staff personnel. Yet in behalf of his Division he had appeared before the Commission in connection with acceleration of the effective dates of certain registration statements filed "by issuers other than South Bay, in which Amos Treat & Co. Inc. was named as an underwriter." He then officially discussed with the Commission the general policy to be followed.

6. 102 U.S.App.D.C. 391, 392, 254 F.2d 90, 91 (1958).

7. North American Airlines v. Civil Aeronautics Board, 100 U.S.App.D.C. 5, 12, 240 F.2d 867, 874 (1956), cert. denied, 353 U.S. 941, 77 S.Ct. 815, 1 L.Ed.2d 760 (1957).

8. Neisloss v. Bush, 110 U.S.App.D.C. 396, 402, 293 F.2d 873, 879 (1961); Massachusetts Bay Telecasters v. F. C. C., 104 U.S. App.D.C. 226, 261 F.2d 55 (1958); WKAT, Inc. v. F. C. C., 103 U.S.App. D.C. 324, 258 F.2d 418 (1958).

9. R. A. Holman & Co. v. Securities and Exchange Commission, supra text; and see 17 C.F.R. §§ 200.62, 201.11 (Supp. 1962).

10. Federal Radio Comm'n v. Nelson Bros. Co., 289 U.S. 266, 277, 53 S.Ct. 627, 72 L.Ed. 1166 (1933).

After his accession to membership on the Commission, the Division of Corporation Finance made certain recommendations, discussed the facts developed during the course of the investigation and outlined matters proposed to be established. "Apart from receiving and considering this recommendation as a member of the Commission," he was not consulted, he said. Again, his statement shows, he considered a memorandum in January 1962 which had discussed the basis for the staff recommendation, the theory of the case and the matters the staff expected to establish. "Apart from receiving and considering this recommendation as a member of the Commission," he was not consulted, he wrote. Commissioner Cohen concluded his statement of April 11, 1962 with the request that the Commission itself pass on the question as to his qualification to act.

17 C.F.R. § 200.60 (Supp.1962) of the Commission's regulations reads as follows:

"*Qualifications to participate in particular matters.*

"The question in a particular matter rests with that individual member. Each member should weigh carefully the question of his qualification with respect to any matter wherein he or any relatives or former business associates or clients are involved. *He should disqualify himself in the event he obtained knowledge prior to becoming a member of the facts at issue before him in a quasi-judicial proceeding,* or in other types of proceeding in any matter involving parties in whom he has any interest or relationship directly or indirectly. If an interested person suggests that a member should disqualify himself in a particular matter because of bias or prejudice, the member shall be the judge of his own qualification." (Emphasis added.)

And 5 U.S.C.A. § 1004(c) provides that

"No officer, employee, or agent engaged in the performance of inves-

tigative or prosecuting functions for any agency in any case shall, in that or a factually related case, participate or advise in the decision, recommended decision, or agency review pursuant to section 1007 of this title except as witness or counsel in public proceedings."

Notwithstanding the statute and the regulation, after consideration of Commissioner Cohen's statement, the "other members of the Commission concluded that, even aside from the fact the exclusionary provisions of Section 5(c) of the Administrative Procedure Act do not apply to members of the Commission, Commissioner Cohen was not disqualified from participating in the proceedings."

■ We find ourselves unable to endorse that conclusion for the reasons previously stated. Section 5(c) applied to Commissioner Cohen as director of the Division of Corporation Finance. Its prohibitory impact followed him and attended when he became a member of the Commission.

■ It is our view that the exclusionary sentence relied upon was intended to permit one who is a Commissioner to participate in a decision of the Commission that an investigation go forward and even that charges be filed to the end that an adjudicatory proceeding might be initiated. In such circumstances, it was the purpose of Congress as we construe the section, to permit a Commissioner to participate in the ultimate decisional process, and not otherwise.

We are unable to accept the view that a member of an investigative or prosecuting staff may initiate an investigation, weigh its results, perhaps then recommend the filing of charges, and thereafter become a member of that commission or agency, participate in adjudicatory proceedings, join in commission or agency rulings and ultimately pass upon the possible amenability of the respondents to the administrative orders of the commission or agency. So to hold, in our view, would be tantamount to that

denial of administrative due process against which both the Congress and the courts have inveighed.

Enough has been said to demonstrate the basis for our conclusion that an administrative hearing of such importance and vast potential consequences must be attended, not only with every element of fairness but with the very appearance of complete fairness. Only thus can the tribunal conducting a quasi-adjudicatory proceeding meet the basic requirement of due process.

 Accordingly, solely on due process grounds,[11] we conclude the District Court had jurisdiction to entertain appellants' claim as has this court to review the court's order denying relief. Our order will provide that if the Commission be so advised, appellants are to be charged and to be heard in proceedings in which Commissioner Cohen will not have participated.[12] But in new proceedings the Commission may utilize and consider all material gathered and recommendations submitted by the Division of Corporation Finance. Restated, the public agency, with respect to the charges under inquiry, is entitled to the benefits of the services of its staff member Manuel F. Cohen, while so serving, but not to participation by him as a Commission member.

The Commission seems to think that any such conclusion might bar all revocation and related proceedings against these appellants. Not at all. The national public interest set forth in section 2 of the Act[13] is paramount, and the Commission is to be permitted to conduct appropriate proceedings in aid of performance of the duties entrusted to it.

Our order reversing the order of the District Court accordingly is to be without prejudice to the institution of new proceedings against these appellants, if the Commission be so advised, and our order and the resulting order of the District Court will so provide.[14] The District Court will issue a preliminary injunction restraining further conduct of the proceedings instituted pursuant to the Commission's order of January 17, 1962. An order will issue directing the Commission to show cause within twenty days why a permanent injunction shall not be entered as to which it shall be a sufficient response if the Commission in the alternative shall:

(1) within that period, advise the District Court that the Commission has instituted a full evidentiary hearing for the purpose of determining upon a complete record whether or not any Commissioner should have been disqualified for the reasons we have discussed because of prior staff service; and the Commission shall thereafter submit a full report and the record upon which it is based to the District Court, and upon consideration of such report and record, the District Court may then dissolve the preliminary injunction and discharge the rule to show cause or enter a permanent injunction as it may be advised in the light of this opinion; or

(2) within that period, advise the District Court that the Commission has

---

11. And not by way of review of the Commission's orders. Cf. Farmer v. United Electrical, Radio & Machine Workers, 93 U.S.App.D.C. 178, 181, 182, 211 F.2d 36, 39, 40 (1953), cert. denied, 347 U.S. 943, 74 S.Ct. 638, 98 L.Ed. 1091 (1954).

12. This case does not present a "rule of necessity" situation. Cf. Marquette Cement Mfg. Co. v. Federal Trade Commission, 147 F.2d 589, 593, 594 (7 Cir. 1945). And see Federal Trade Comm'n v. Cement Institute, 333 U.S. 683, 700, 703, 68 S.Ct. 793, 92 L.Ed. 1010 (1948).

13. 15 U.S.C.A. § 78b.

14. It may be noted the Commission in its April 11, 1962 order deemed it advisable to issue a "restatement of relevant issues" and otherwise defined the future scope of the proceedings and the nature of the evidence deemed relevant to its purposes. It is not our function nor within the ambit of our authority with the case in its present posture to pass on that order, and we expressly refrain from doing so. Should new proceedings be instituted, it may seem that all parties may benefit from clarification and definition of the issues and previously controverted rulings with respect thereto.

**268**

terminated the proceeding against the appellants initiated pursuant to the January 17, 1962 order, whereupon the District Court shall dissolve the preliminary injunction and discharge the rule to show cause.

Reversed and remanded.