Julian C. TAYLOR, Plaintiff-Appellant,

v.

**NEW YORK CITY TRANSIT AUTHOR-ITY** and Civil Service Commission of the City of New York, Defendants-Appellees.

**No. 23, Docket 34650.**

United States Court of Appeals, Second Circuit.

Argued Sept. 16, 1970.

Decided Oct. 26, 1970.

George J. Robertazzi, Brooklyn, N. Y., for plaintiff-appellant.

John A. Murray, Brooklyn, N. Y. (Sidney Brandes, Brooklyn, N. Y., on the brief), for defendants-appellees.

Before WATERMAN, MOORE and KAUFMAN, Circuit Judges.

MOORE, Circuit Judge:

This is an appeal from an order and judgment granting defendants-appellees' motion for summary judgment and denying plaintiff-appellant's cross-motion for the same relief, under Rules 12 and 56 of the Federal Rules of Civil Procedure. The District Court memorandum and order is reported in 309 F.Supp. 785 (E.D. N.Y.1970).

Appellant Taylor commenced this action under the Civil Rights and Declaratory Judgment Acts, 42 U.S.C. § 1983, 28 U.S.C. §§ 1343, 2201, seeking a declaratory judgment to test the constitutionality of his dismissal by the New York City Transit Authority (Authority) and an injunction to nullify his dismissal and to require his reinstatement with back pay. We assume, without discussion, that there is jurisdiction. See Eisen v. Eastman, 421 F.2d 560, 563–565 (2d Cir. 1969); cf. Gold v. Lomenzo, 425 F.2d 959, 961 (2d Cir. 1970).

The principal question presented for decision to this court is whether a collateral attack on federal constitutional grounds should be permitted against exhaustively litigated and ostensibly final state administrative and judicial determinations of the merits of Taylor's case. For the reasons stated below, we affirm the decision of the district court.

### Facts

The facts in this case are not in dispute. On July 15, 1962, appellant, an Authority Road Car Inspector then off duty, was involved in an altercation in which he was implicated in an assault with a gun upon a stranger. He was arrested, but criminal charges were subsequently dropped. When the facts of his off duty behavior came to the attention of the Authority, a formal charge and specification was prepared by the office of the Authority's General Counsel which was responsible for the prosecution of dismissal actions. The charge was brought pursuant to the agency's rules and regulations and was served together with a notice of hearing on July 30, 1962 over the name of the then General Counsel, Daniel T. Scannell (Scannell), who had been on vacation in Europe since July 10th, not to return until August 13th.

On August 9th, a day after all criminal charges were dropped against appellant, a departmental hearing on the misconduct charge was held before a hearing referee, who sustained the charge and recommended discharge of appellant from the Authority's employ. The report containing the referee's findings and recommendation, along with a full transcript, was submitted to the Authority's Members on August 12th. On August 13th, Scannell returned from Eu-

rope, and on August 14th was appointed a Member of the Authority, succeeding a Member who resigned the same day to accept a judicial appointment. In the absence of the Authority's third Member, Scannell, on September 4th, cast the second, last and deciding vote against appellant, who was then formally notified of his dismissal. It is this "dual role" played by Scannell which appellant claims vitiates his dismissal.

Under § 76 of the New York Civil Service Law, McKinney's Consol.Laws, c. 7,[1] appellant was required, within 20 days of the Authority's decision to elect to appeal his discharge either to the New York City Civil Service Commission (Commission) or to a New York Supreme Court under Article 78 of the New York Civil Practice Law and Rules. Appellant elected to appeal to the Commission, which held a judicial-like adversary proceeding in which the parties were represented by counsel. The Commission denied appellant's appeal on or about June 7th, 1963. At no time was the constitutional issue of Scannell's disqualification raised in these proceedings.

On September 18, 1964, 15 months after the Commission's denial of his appeal, appellant commenced an Article 78 proceeding, which combines elements of common law mandamus and certiorari, in the New York Supreme Court, Kings County, Special Term, alleging the same grounds and seeking the same relief as here. The New York court dismissed the proceeding on January 13, 1965, on

[1]. Section 76 of the New York Civil Service Law, as effective in 1962, then reads as follows:

"§ 76. *Appeals from determinations in disciplinary proceedings*

"1. Appeals. Any officer or employee believing himself aggrieved by a penalty or punishment of demotion in or dismissal from the service, or suspension without pay for a period exceeding ten days, or a fine of over fifty dollars, imposed pursuant to the provisions of section seventy-five of this chapter, may appeal from such determination either by an application to the state or municipal commission having jurisdiction, or by an application to the court in accordance with the provisions of article seventy-eight of the civil practice act. If such person elects to appeal to such civil service commission, he shall file such appeal in writing within twenty days after receiving written notice of the determination to be reviewed.

"2. Procedure on appeal. Where appeal is taken to the state or municipal commission having jurisdiction, such commission shall review the record of the disciplinary proceeding and the transcript of the hearing, and shall determine such appeal on the basis of such record and transcript and such oral or written argument as the commission may determine. The commission may direct that such appeal shall be heard by one or more members of the commission or by a person or persons designated by the commission to hear such appeal on its behalf, who shall report thereon with recommendations to the commission. Upon such appeal the commission shall permit the employee to be represented by counsel.

"3. Determination on appeal. The determination appealed from may be affirmed, reversed, or modified, and the state or municipal commission having jurisdiction may, in its discretion, direct the reinstatement of .he appellant or permit the transfer cf such appellant to a vacancy in a similar position in another division or department, or direct that his name be placed upon a preferred list pursuant to section eighty-one of this chapter. In the event that a transfer is not effected, the commission is empowered to direct the reinstatement of such officer or employee. An employee reinstated pursuant to this subdivision shall receive the salary or compensation he would have been entitled by law to have received in his position for the period of removal including any prior period of suspension without pay, less the amount of compensation which he may have earned in any other employment or occupation and any unemployment insurance benefits he may have received during such period. The decision of such civil service commission shall be final and conclusive, and not subject to further review in any court.

"4. Nothing contained in sections seventy-five or seventy-six of this chapter shall be construed to repeal or modify any general, special, local law or charter provision relating to the removal or suspension of officers or employees in the competitive class of the civil service of the state or any civil division. L.1958, c. 790, eff. April 1, 1959."

the ground that the Commission action was not "arbitrary" and that appellant's election under § 76 "with knowledge of all the facts" to appeal to the Commission precluded his maintaining the court action. The Supreme Court, Appellate Division, unanimously affirmed on the same ground of election of remedies and additionally grounded its affirmance on the lapsing of the applicable four-month statute of limitations for Article 78 actions. Taylor v. New York City Transit Authority, 25 A.D.2d 682, 269 N.Y.S. 2d 75, 76 (2d Dep't 1966). The Appellate Division, however, was not quite as firm on the issue of plaintiff's "knowledge" regarding Scannell's participation in the Authority's dismissal proceedings:

> "We additionally find that petitioner knew, or should have known, at the time of his appeal to the Civil Service Commission, that Commissioner Scannell had taken part * * *" Id.

The judgment was unanimously affirmed without opinion by the New York Court of Appeals. Taylor v. New York City Transit Authority, 19 N.Y.2d 724, 279 N.Y.S.2d 181, 225 N.E.2d 886 (1967). Review was not sought in the United States Supreme Court. Instead, the present action was instituted in the District Court below.

### Judicial Res Judicata

Section 76(3) of the New York Civil Service Law provides that "[t]he decision of such civil service commission shall be final and conclusive, and not subject to further review in any court." The absolute language of this statutory subsection notwithstanding, however, New York courts have asserted jurisdiction over claims where state agency determinations under § 76 have been "purely arbitrary." See, e. g., Trotman v. Hoberman, 56 Misc.2d 915, 290 N.Y.S.2d 680 (Sup.Ct., Spec.Term, N.Y.Co.1968); Santella v. Hoberman, 29 A.D.2d 655, 286 N.Y.S.2d 647 (2d Dep't 1968). The rationale underlying the assertion of judicial supervision over the proceedings of state agencies in such cases is that

the New York legislature did not intend the words of the statute to be read in the absolute sense. Cf. Board of Educ. of City of New York v. Allen, 6 N.Y.2d 127, 136, 188 N.Y.S.2d 515, 520, 160 N.E. 2d 60 (1959). However, in Taylor's case, the Appellate Division, Second Department, refused to entertain appellant's constitutional claim on the ground that the Commission's determination of his case was not "purely arbitrary."

Judge Weinstein apparently concluded that because New York courts dismissed for lack of jurisdiction and/or lapsing of the statute of limitations, there is no *res judicata* effect to be accorded the final state court judgment in appellant's case. See 309 F.Supp. at 790. We disagree. While the state courts perceived themselves as powerless under § 76(3) to hear Taylor's belated Article 78 due process claim, it was only because the due process claim was not raised in the first instance before the Commission that they could not do so. Had appellant prosecuted his constitutional objection in a timely manner, and had the Commission made an unsatisfactory disposition thereof, the courts of New York, in the exercise of their responsibility under the Supremacy Clause of the United States Constitution to entertain federal constitutional questions, no doubt would have taken jurisdiction of appellant's case. Cf. Testa v. Katt, 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947); Amos Treat & Co. v. S. E. C., 113 U.S. App.D.C. 100, 306 F.2d 260 (1962); Trans World Airlines, Inc. v. C. A. B., 102 U.S.App.D.C. 391, 254 F.2d 90 (1958). It is in this sense that we find that the state courts made a final determination on the "merits," which, under the principle of *res judicata,* we should not disturb.

### Collateral Estoppel

In any event, the pivotal issue on which appellant's constitutional claim turns is the state of his knowledge as of the date of his § 76 Commission hearing. Appellant claimed before the New York courts, as he claims here, that he had no

opportunity to raise his constitutional due process objection before the Commission, since he was not aware of the "dual role" played by Scannell until after the administrative determination had become final. Critical to the state courts' dismissal of appellant's Article 78 petition was their finding that appellant had actual or at least imputed knowledge of Scannell's "dual role," predicated on the minutes of the Commission hearing, wherein appellant's attorney expressly referred to the Authority report and determination which bore the printed and signed name of Scannell in both his former capacity as the Authority's General Counsel and his subsequent capacity as Member of the Authority's governing board. The report was dated August 2, 1962, signed by Scannell as Member on September 4, 1962, and filed on September 14, 1962. A copy of the report was sent to appellant on the last-mentioned date.

We therefore agree with Judge Weinstein, judicial *res judicata* aside, that under the doctrine of collateral estoppel he was "bound to accept as true," 309 F.Supp. at 790–791, the material and necessary state courts' finding of a degree of knowledge sufficient to justify their dismissal of the Article 78 petition.

### Minimum Due Process Standards

Appellant strenuously argues that the issue of knowledge is irrelevant with regard to the applicable standard of minimum due process in this case. There was no need for an objection to be raised at all before the Commission, he maintains, because Scannell's participation as prosecutor and judge in the process leading to his dismissal from the Authority's employ constituted a *per se* violation of his Fourteenth Amendment due process rights which deprived the Authority, and therefore the Commission, of jurisdiction and rendered "any judgment attempted absolutely void and of no effect." We do not agree.

We are cited to three cases, on which appellant heavily relies to support his contention: Commonwealth Coatings

Corp. v. Continental Casualty Co. et al., 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301, reh. denied, 393 U.S. 1112, 89 S.Ct. 848, 21 L.Ed.2d 812 (1968) ; Amos Treat & Co. v. S. E. C., *supra;* and Trans World Airlines Inc. v. C. A. B., *supra.* We find all three distinguishable from the instant case and not supportive of appellant's due process proposition. In *Commonwealth Coatings, supra,* the Supreme Court set aside as hopelessly tainted a unanimous arbitration award on the ground that it was a *per se* violation for one of the arbitrators to participate in the arbitration proceedings when there had been nondisclosure of his previous nontrivial dealings with one of the parties to the arbitration. The violation complained of there was not of constitutional due process but of a provision in the United States Arbitration Act, 9 U.S.C. § 10, which sets out the conditions upon which arbitration awards may be vacated. See 393 U.S. at 148, 89 S.Ct. 337. This case is also distinguishable from *Commonwealth Coatings* on the basis that the fatal taint there derived not from the alleged conflict of interest but from the arbitrator's nondisclosure thereof. It was established that the business connections between the third "neutral" arbitrator and one of the parties were never revealed by anyone and were unknown to the petitioner until *after* the award had been made. 393 U. S. at 146, 89 S.Ct. 337. Such is not the case here, where, although there was no affirmative disclosure by Scannell, appellant knew or should have known of Scannell's "dual role" as of the date of the Commission hearing and was afforded full opportunity to assert his constitutional objection at that time. We are satisfied that this fact situation meets the minimum standards of due process required by the Constitution, and that the reasoning of *Commonwealth Coatings,* by analogy, does not require more.

*Amos Treat, supra,* is closer to the instant case on its facts. The director of the Securities and Exchange Commission's Division of Corporation Finance, who was "responsible to the Commission

for the initiation, conduct and supervision" of proceedings which eventually brought the appellant there before the Commission, 306 F.2d at 262, was elevated to the position of Commissioner in time to participate in the quasi-judicial function of the Commission relating to the broker-dealer registration of the appellant. T. W. A., *supra,* is also similar on its facts. There, the Solicitor of the Post Office Department signed a brief to the Civil Aeronautics Board in behalf of the Postmaster General and thereafter became a C. A. B. Member, who cast certain votes in his latter capacity on an issue with which he had the former connection. In addressing itself to the Fifth Amendment due process problem, the *Amos Treat* court relied on the following strong language in its earlier *T. W. A.* opinion, upon which appellant also relies:

> "The fundamental requirements of fairness in the performance of such [quasi-judicial] functions require at least that one who participates in a case on behalf of any party, whether actively or merely formally by being on pleadings or briefs [as here], take no part in the decision of that case by any tribunal on which he may thereafter sit." 254 F.2d at 91, quoted at 306 F.2d at 264.

The *Amos Treat* court also concluded as follows:

> "It is not enough that here no corruption has been charged, indeed appellants expressly disclaim personal bias and prejudice. What must control is the policy this court has previously applied and the principles, discernible from the cases and the statute, that the investigative as well as the prosecuting arm of the agency must be kept separate from the decisional function." 306 F.2d at 265.

Nowhere in *Amos Treat* or in *T. W. A.,* however, is there support for the proposition that participation in a "dual role," as here, constitutes a *per se* deprivation of due process, thereby automatically voiding an administrative proceeding. Indeed, the contrary is true. During the hearing process in *Amos Treat,* when the appellants there received a critical S. E. C. ruling, they sought the identity of the Commission members who had participated in its promulgation, and for the first time discovered the "dual role" complained of there and immediately moved for a discontinuance or, in the alternative, for an evidentiary hearing on the issue of disqualification of the Commissioner in question. 306 F.2d at 263. The court explicitly noted that "[t]his was not a case where the petitioners had waited until the entire hearing had been held before they moved that a Board member be disqualified," 306 F.2d at 265, and cited for distinguishing purposes North American Airlines, Inc. v. C. A. B., 100 U.S.App.D.C. 5, 240 F.2d 867, 874 (1956), cert. denied, 353 U.S. 941, 77 S.Ct. 815, 1 L.Ed.2d 760 (1957). In that case, appellants claimed that a C. A. B. proceeding against them had to be remanded because of the Board's failure to disqualify one of its members or to inquire into his qualifications vis-a-vis participation in the matter over which review was sought. There, as here, the claim was made *after* all administrative proceedings had been completed; and there, as here, the court would not allow a party to sit back awaiting a possibly favorable outcome and then afterward come forward at his convenience to attack collaterally an unfavorable decision with a disqualification claim based on facts within at least imputed knowledge prior to the final agency determination of his case. See also, In re Union Leader Corp., 292 F.2d 381, 390 (1st Cir.), cert. denied, 368 U.S. 927, 82 S.Ct. 361, 7 L.Ed.2d 190 (1961); In re United Shoe Machinery Corp., 276 F.2d 77, 79 (1st Cir. 1960). We conclude that by failing to make a timely objection before the Commission, appellant has waived his right to judicial review of his constitutional objection.

### Administrative Res Judicata

■ *Res judicata* effect may attach to valid final state agency determinations on the merits. Cf. Magnolia Pe-

troleum Co. v. Hunt, 320 U.S. 430, 64 S. Ct. 208, 88 L.Ed. 149 (1945); Industrial Comm. of Wisconsin v. McCartin, 330 U.S. 622, 67 S.Ct. 886, 91 L.Ed. 1140 (1947). We are satisfied with Judge Weinstein's careful analysis of the interest balancing considerations leading to the conclusion that *res judicata* effect ought to be given to the determination of the New York City Civil Service Commission. The Commission afforded Taylor procedural due process and an opportunity to raise his constitutional objection; and the courts of New York, with few exceptions, accord finality to administrative determinations of the instant variety.

### Conclusion

 A state administrative disciplinary system can and does directly and substantially affect a man's livelihood and career pursuits. Minimal standards of due process require that in cases such as the present, an "accused" is entitled to an impartial judge, untainted by any connection which might suggest the contrary. We agree with appellant and Judge Weinstein that when such a system, as here, fails to provide for the separation of prosecutorial and judicial functions, by allowing one even remotely responsible for initiating and pressing charges leading to dismissal to cast the deciding vote upholding the prosecution, a substantial issue of constitutional due process is raised. On the other hand, we do not perceive a compelling federal interest to be vindicated which would necessitate overriding clearly strong New York state interests with regard to the finality of state agency decisions and the regulation of state employee behavior, within judicially supervised constitutional limits, of course. To allow collateral attacks on these interests in a federal forum would be to deliver unnecessary and potentially debilitating blows to legitimate areas of State responsibility.

Appellant has made his statutory election, and by his own omission effectively tied the hands of the New York courts, whose judgment we feel bound to honor. He must now live with his decision.

We affirm the judgment below.