Robert D. BARNES

v.

George W. CHATTERTON et al.

Civ. A. No. 72–806.

United States District Court,
E. D. Pennsylvania.

April 3, 1974.

Robert D. Barnes, Philadelphia, Pa., for plaintiff.

Robert E. J. Curran, U. S. Atty., Michael B. L. Hepps, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

BRODERICK, District Judge.

The instant litigation arises from a complaint and amended complaint served on the named defendants: (1) seeking a preliminary injunction enjoining the defendant, George W. Chatterton, the Regional Appeals Examiner of the Civil Service Commission (CSC), from proceeding with the scheduled hearing of plaintiff's appeal before the CSC, pending final determination of this matter by this Court; (2) seeking a Court order that the Regional Appeals Examiner render a decision as to whether [sic] the documents sought by the plaintiff are relevant and material to the issues covered by the plaintiff's appeal before the CSC; and (3) seeking a Court order that the named defendants produce and make available to the plaintiff certain Navy Contract Adjustment Board Files (NCAB), Volumes II, III and IV of a certain report of the Navy Investigator

General (NIG), together with the enclosures to Volume I and certain FBI Reports. The defendants have moved to dismiss the complaint and amended complaint.

Plaintiff, a veteran-preference eligible, was employed as an attorney with the Office of Counsel, United States Naval Aviation Supply Office, Philadelphia, Pennsylvania. On July 12, 1971, the Department of the Navy gave to the plaintiff a Notice of Proposed Separation which informed him of various offenses allegedly committed by him. The legal basis for plaintiff's removal is contained in 5 U.S.C. § 7512. The facts alleged by the Navy as the basis for plaintiff's separation are contained in the aforementioned Notice of Proposed Separation.

Briefly summarized, the action taken by the Navy in discharging the plaintiff was prompted by the plaintiff's alleged pattern of misconduct over at least a two-year period involving repeated instances of refusing to obey instructions relating to plaintiff's activities concerning Navy contracts with the Kurz & Root Company, Inc. and the Decitron Electronics Corporation. According to the Navy's allegations, the plaintiff spent a considerable amount of time on these contracts to the neglect of other assigned work and in contravention of the directions of his superiors. It is also alleged in the Notice of Proposed Separation that the plaintiff was openly critical of any agency or person who disagreed with his position with respect to the Kurz & Root and Decitron cases.

During the period from August 23 to 27, 1971 the plaintiff delivered his oral reply to the General Counsel of the Navy as to the charges which were made against him by his immediate superior. On September 10, 1971 a final agency decision was rendered by the General Counsel of the Navy sustaining the Notice of Proposed Separation. By letter dated September 15, 1971, the plaintiff appealed his separation to the Regional Director of the Civil Service.

It is the plaintiff's contention that he sought to establish and expose corruption, irregularities and wrong doing of certain government contractors and irregularities and improper conduct in the Office of the General Counsel of the Navy with reference to the following:

(1) A Navy Contract Adjustment Board decision of November 26, 1969, allegedly authorizing wrongfully, certain price increases aggregating $1.2 million without consideration, in favor of Decitron Electronics Corp., a government contractor;

(2) Fraudulent dealings with the government with respect to Kurz & Root Co., Inc., a government contractor; and

(3) Conduct of the General Counsel of the Navy Department and members of his staff consistent with a cover-up of highly irregular facts and circumstances involving fraud and corruption in connection with Decitron decision and Kurz & Root.

The plaintiff contends that he was discharged because of his refusal to discontinue his efforts to expose the alleged corruption and alleged irregularities concerning the above-mentioned Navy dealings with Decitron and Kurz & Root.

In the process of his appeal to the CSC, the plaintiff, by letter dated February 24, 1972, repeated an earlier request that the Navy Department make its NCAB File covering its Decitron decision available to the Regional Appeals Examiner and to the plaintiff, delineating in said letter the alleged relevancy and materiality of this file to the plaintiff's appeal. The Navy Department denied plaintiff's request. The Regional Appeals Examiner by letter to the plaintiff dated April 6, 1972, refused to direct or request the production of the NCAB File for use in the plaintiff's appeal.

The plaintiff in letters dated November 18 and December 10, 1971, requested a copy of the Navy Inspector General Investigative Report consisting of four

volumes and allegedly referred to on page ten of the Notice of Proposed Removal. The Navy Department initially refused to produce the NIG report; however, upon request of the Regional Appeals Examiner to produce the NIG report to be included in the plaintiff's appeal file, the Navy Department made available only one volume (Volume I) of the four-volume report. Certain exhibits attached to Volume I were not furnished to the plaintiff. The Regional Appeals Examiner took no further action to obtain Volumes II, III and IV and the attachments to Volume I of the NIG Report.

In a letter dated January 31, 1972, the plaintiff also requested the Director of the FBI to furnish the Regional Appeals Examiner a copy of each of the eight FBI reports pertaining to the Kurz & Root matter. By letter dated February 17, 1972, the FBI stated that no action would be taken on the plaintiff's request since the Regional Appeals Examiner had made no request for such reports. The plaintiff then requested the Regional Appeals Examiner to obtain the FBI reports. The Regional Appeals Examiner denied the plaintiff's request.

Plaintiff's appeal hearing before the Regional Board of the CSC was originally scheduled for March 15, 1972 but was postponed till May 4, 1972. On April 24, 1972 plaintiff filed a complaint in this Court seeking the relief outlined above. The question of enjoining the defendant Regional Appeals Examiner from proceeding with the scheduled hearing of plaintiff's appeal before the CSC was mooted by the fact that the Regional Appeals Examiner agreed to continue plaintiff's appeal pending the outcome of the instant litigation. The plaintiff filed an amended complaint on July 20, 1972. The Court, on July 31, 1972, scheduled a hearing for September 11, 1972. In the interim, on August 30, 1972 the defendants filed a Motion to Dismiss alleging primarily that this Court was without jurisdiction since the plaintiff had failed to exhaust his administrative remedies. On September 11, 1972 oral argument was heard on the Motion to Dismiss. By order dated January 18, 1973 the Court denied the Motion to Dismiss. On January 31, 1973 the defendants filed a motion requesting this Court to certify for appeal the order of January 18, 1973 on the grounds that the order involved a controlling question of law and that an immediate appeal would materially advance the ultimate termination of the litigation. By order dated February 21, 1973 the Court, after a hearing, granted the motion of plaintiff's attorney to withdraw his appearance. By order dated March 13, 1973 the Court denied the defendants' motion for certification. On March 30, 1973 the defendants filed their Answer to the plaintiff's Amended Complaint, and a settlement conference was held on September 17, 1973. At this conference the defendants reiterated their position that this Court had no jurisdiction of this matter and that the documents requested by the plaintiff were both privileged and irrelevant to plaintiff's appeal before the CSC. In an effort to settle this matter, the Court suggested that the defendants submit the documents to the Court for an *in camera* inspection. By letter dated September 28, 1973 the defendants declined the Court's suggestion. The defendants renewed their motion that the Court reconsider its Order of January 18, 1973 denying the Motion to Dismiss. On November 30, 1973 the Court heard reargument on the defendants' Motion to Dismiss. At the reargument, one of the defendants, Mr. Chatterton, the Regional Appeals Examiner for the CSC, stated in open Court that the plaintiff would be afforded a full opportunity, at a prehearing proceeding before the CSC, to renew his request that the documents be made available for his hearing and to present his argument that the documents in question are relevant and material.

The plaintiff is asking this Court to order the defendants to produce the following: Navy Contract Adjustment Board files covering a decision of the

Navy Contract Adjustment Board involving Decitron Corporation; Volumes II, III and IV, together with attachments to Volume I of a Navy Inspector General (NIG) Report involving the Kurz & Root Company and Decitron Corporation; and, eight FBI reports pertaining to the Kurz & Root Company.

The plaintiff bases his claim upon two grounds: (1) that he is entitled to these documents by virtue of certain regulations which purportedly guarantee to a dismissed employee the opportunity to review all the material relied upon by the agency to support his dismissal and (2) that these documents are relevant and material to his appeal before the CSC and to deny him the right of discovery as to these documents would be a violation of his constitutional rights. In light of these claims, the immediate issue facing this Court is whether it has the jurisdiction to intervene at an interlocutory stage of the plaintiff's appeal proceedings before the CSC, prior to final action by the CSC, in order to determine whether the documents should be made available to the plaintiff.

▪▪▪ It is well established law that before one may resort to this Court for relief he must first exhaust his administrative remedies. Federal Communications Commission v. Schreiber, 381 U.S. 279, 85 S.Ct. 1459, 14 L.Ed.2d 383 (1969); W. E. B. DuBois Clubs of America v. Clark, 389 U.S. 309, 88 S.Ct. 450, 19 L.Ed.2d 546 (1967); American Federation of Government Employees v. Resor, 442 F.2d 993 (3d Cir. 1971); United Gas Pipe Line Company v. Federal Power Commission, 206 F.2d 842 (3d Cir. 1953). When Congress has provided an administrative procedure which is capable of resolving the issues such procedure must be utilized. It is only after the final administrative decision that the aggrieved party may invoke the jurisdiction of this Court. American Federation of Government Employees v. Resor, supra, 442 F.2d at 994. To be sure, as with most general rules there are exceptions. If the prescribed administrative procedure is

clearly shown to be inadequate to prevent irreparable injury and there is a violation of a statutory or a constitutional right, a party need not exhaust his administrative remedies. Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958); Public Utilities Commission v. United States, 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958); Columbia Broadcasting System v. United States, 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563 (1942); American Federation of Government Employees v. Resor, supra; Securities and Exchange Commission v. R. A. Holman & Company, 116 U.S.App.D.C. 279, 323 F.2d 284 (1963); Amos Treat & Company v. Securities and Exchange Commission, 113 U.S.App.D.C. 100, 306 F.2d 260 (1962); Sperry and Hutchinson Company v. Federal Trade Commission, 256 F.Supp. 136 (S.D.N.Y.1966); R. H. Macy & Company v. Tinley, 249 F.Supp. 778 (D.D.C.1966); Knoll Associates, Inc. v. Dixon, 232 F.Supp. 283 (S.D.N.Y.1964). For a court to take jurisdiction where the plaintiff has not exhausted his administrative remedies there must be a showing that the alleged violation is at variance with one of the plaintiff's rights and that the plaintiff will suffer irreparable injury if the court does not intervene.

Judicial reluctance to interfere with the preliminary and procedural determinations before an administrative agency stems from the court's desire to avoid undue protraction of administrative proceedings as well as the obvious desirability of having complex matters resolved in the first instance by the agency. Davis, Administrative Law § 8.03 (1958). In this vein, agency refusals to accede to pre-hearing demands for the production of information have withstood interlocutory attack in the courts. Sperry & Hutchinson Company v. Federal Trade Commission, supra, and cases cited therein.

▪▪▪ It has been said unequivocally that "administrative orders of a merely preliminary or procedural character are not directly or immediately reviewable." Sperry & Hutchinson Company v. Feder-

al Trade Commission, *supra* at 140. Only rarely will preliminary or procedural agency action threaten so irreparable an injury as to justify interlocutory resort to corrective judicial process. Bristol-Myers Company v. Federal Trade Commission, 469 F.2d 1116 (2d Cir. 1972). Likewise an agency's evidentiary rulings in the course of a proceeding do not constitute a final order justifying judicial review except in extreme instances where the action is held to constitute an effective deprivation of plaintiff's rights. Thermal Ecology Must Be Preserved v. Atomic Energy Commission, 139 U.S.App.D.C. 366, 433 F.2d 524 (1970). Indeed, § 10(c) of the Administrative Procedure Act, 5 U.S.C. § 704 provides that any preliminary, procedural or intermediate agency action not otherwise reviewable may be scrutinized by the courts only upon review of final agency action.

 In the instant case the plaintiff appealed his dismissal from the Department of the Navy to the Regional Appeals level of the CSC. In the plaintiff's appeal before the CSC, the Navy is bound by the allegations recited in the Notice of Proposed Separation to support its dismissal action. If the Regional Appeals Examiner determines that none of the reasons cited by the Navy in the Notice support the dismissal action, then the plaintiff will be reinstated, 5 U.S.C. § 7701, with the right to recover his back pay, 5 U.S.C. § 5596. The Navy, however, need not prove all of the allegations contained in the Notice but only such allegations as will justify a dismissal of the plaintiff "for such cause as will promote the efficiency of the service." If the Navy fails to establish one of the charges in the Notice, such charge may be dropped. Baughman v. Green, 97 U.S.App.D.C. 150, 229 F.2d 33 (1956). However, this does not invalidate the employee's removal if the remaining well-proven charges are sufficient to warrant removal. Deviny v. Campbell, 90 U.S.App.D.C. 171, 194 F.2d 876 (1952).

If the plaintiff does not prevail at the Regional Appeals level, he has a right to appeal the "Regional" decision to the Civil Service Commission Board of Appeals and Review in Washington, D. C. The Board of Appeals and Review reviews the record of the proceedings and all relevant written representations and renders a final decision. 5 C.F.R. § 772.301 et seq. (1973).

 If a dismissal or other adverse action is upheld after exhaustion of the administrative procedures available to the plaintiff, he may turn to the federal courts to secure reinstatement and to recover back pay for the period of his alleged wrongful dismissal. After exhausting his administrative remedies, one of the plaintiff's paths of review is to the federal district court. The district courts have jurisdiction to review adverse decisions of the Civil Service Commission. Benson v. United States, 421 F.2d 515 (9th Cir.), cert. denied, 398 U.S. 943, 90 S.Ct. 1861, 26 L.Ed.2d 279 (1970); Charlton v. United States, 412 F.2d 390 (3d Cir. 1969); Camero v. McNamara, 222 F.Supp. 742 (E.D.Pa. 1963); Taylor v. Civil Service Commission, 374 F.2d 466 (9th Cir. 1967); 5 U.S.C. § 702 (1970).

 The scope of review of employee actions in the federal district court extends to a review of the procedure followed in effecting the dismissal, to assure that the decision was not "arbitrary and capricious"; to a review to assure that the decision was supported by substantial evidence on the record, Charlton v. United States, *supra*; and to a review and remand where the administrative agency's improper exclusion of evidence amounts to prejudicial error. N. L. R. B. v. Capitol Fish Company, 294 F.2d 868 (5th Cir. 1961); Eastman Kodak Company v. E. I. DuPont de Nemours Company, 284 F.Supp. 389 (E. D.Tenn.1968); Dolcin Corporation v. Federal Trade Commission, 94 U.S.App. D.C. 247, 219 F.2d 742 (1955).

The plaintiff may choose to appeal the CSC's final decision to the Court of

Claims under 28 U.S.C. § 1491. The Court of Claims generally adheres to the same scope of review as that of the district court, Peters v. United States, 408 F.2d 719, 187 Ct.Cl. 63 (1969); however, the Court of Claims may, if it feels that the record before it was not adequately developed by the CSC, remand the matter to one of its own trial commissioners and direct him to hold a limited fact-finding hearing. Camero v. United States, 345 F.2d 798, 170 Ct.Cl. 490 (1965). The Court of Claims may grant back pay and reinstatement. 28 U.S.C. § 1491.

Accordingly, this Court must decide in this action whether the plaintiff has established a case for a departure from the general rule that he must exhaust his administrative remedies. In determining whether we should by-pass the exhaustion principles outlined above, we must bear in mind that the administrative determination thus far made in this matter has been in the pre-hearing stage and that the plaintiff will be afforded additional opportunity to present his claim that the documents he seeks should be made available to him for his hearing.

As stated, the plaintiff's first claim for relief rests heavily upon his contention that the refusal by the Navy Department and the Regional Appeals Examiner to accede to his request for the production of the subject documents contravenes regulatory rights allegedly guaranteeing access to the documents requested. Specifically noted by the plaintiff is Chapter 752, Subchapter 2, subparagraph 2–2c(4) of the Federal Personnel Manual (FPM) which provides:

Supporting Material:

Except for medical information of the sort which may be disclosed only to a licensed physician in accordance with FPM, Chapter 294, Section 4–1b(2), the employee is entitled to review all the material relied on by the agency to support the reasons in the notice, including material relevant to the employee's past record if the record forms part of the basis of the action proposed. This requirement means that the agency cannot use any material to support its reasons, which because of security or other considerations, cannot be disclosed to the employee or his designated physician. The notice must inform the employee of his right to review the material relied on and must tell him where he may review it.

Likewise, the plaintiff relies upon § 752.202(a)(2), (3) of the Civil Service Regulations, which reads:

(2) Subject to the provisions of subparagraph (3) of this paragraph, the material on which the notice is based and which is relied on to support the reasons in that notice, including statements of witnesses, documents, and investigative reports or extracts therefrom, shall be assembled and made available to the employee for his review. The notice shall inform the employee where he may review the material.

(3) Material which cannot be disclosed to the employee, or to his designated physician under # 294.401 of this Chapter, may not be used by any agency to support the reasons of the notice.

The plaintiff claims that in view of these regulations he has a clear and immediate right to all the documents in question on the ground that the Navy relied upon them and if it did not they should have been relied upon in support of reasons set forth in the Notice of Proposed Separation.

The Navy contends that the reasons cited in the Notice of Proposed Separation were the sole basis for the plaintiff's dismissal and that the Notice of Proposed Separation indicates on its face that the documents in question were not relied upon by the Navy as a basis for the plaintiff's removal. Moreover, the Navy claims that all the documents which it relied upon were furnished to the plaintiff.

■ There can be no doubt that the regulations cited above vest a right in the plaintiff to review all the matter which the Navy relied upon to support the reasons in the Notice of Proposed Separation. Moreover, by virtue of the regulations themselves, the Navy is prohibited from using any material in support of its reasons for dismissal which because of security or other considerations cannot be disclosed to the employee.

■ In an individual case the interpretation and application of regulations should rest in the first instance with the administrative agency and a court on review should not substitute its views for those of the agency in connection with the interpretation and application of regulations unless the interpretation and application of the regulations are unreasonable, arbitrary or capricious. Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); Gulf Oil Corporation v. Hickel, 140 U.S.App. D.C. 368, 435 F.2d 440 (1970); Beeline Export, Inc. v. United States, 308 F. Supp. 721 (D.Colo.1970); Peck v. Greyhound Corporation, 97 F.Supp. 679 (S. D.N.Y.1951). The Navy has determined that the plaintiff is not entitled to the documents in question under these regulations, since it allegedly did not rely on them as a basis for dismissing the plaintiff. The Regional Appeals Examiner has made a preliminary determination not to request the production of the documents in question. However, the appeals process from the Navy's dismissal of the plaintiff is only in its pre-hearing stage, and the Regional Appeals Examiner has made no final determination as to whether the documents were relied upon by the Navy Department in dismissing the plaintiff. Clearly, the CSC in the application and implementation of these regulations not only has the duty and power to determine whether the Navy Department did rely on the documents but also has the primary responsibility of interpreting the regulations to determine whether the documents should have been made available to the plaintiff. The Court cannot assume in advance of final administrative action that responsible CSC executive officers will fail to carry out their duty with regard to the application of procedural regulations. It is this Court's opinion that the plaintiff must await the event rather than anticipate it. As stated by the United States Supreme Court in the recent decision in Sampson v. Murray, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974), "Until administrative action has become final, no court is in a position to say that such action did or did not conform to applicable regulations." At this stage of the proceedings, this Court has no evidential basis upon which to determine whether the Navy Department relied upon the documents in question. The CSC has the responsibility for procedural and evidentiary determinations; and where, as in this case, it is an interlocutory determination which the plaintiff seeks, the law requires that the administrative process should make the determination as a prerequisite to judicial review.

In the present posture of this case, we cannot say that the Regional Appeals Examiner has clearly violated statutory authority or that his preliminary determination is at variance with the plaintiff's rights and that the prescribed administrative procedure is inadequate to prevent irreparable injury.

The plaintiff's second ground for relief is his claim that the subject documents are relevant and material to his appeal and any refusal to produce these documents is a deprivation of his due process and first amendment rights to the extent that it constitutes suppression of evidence deemed essential by him to his defense and suppresses his efforts to expose corruption. On this basis, the plaintiff contends that the NCAB file on Decitron should be made available to him. Plaintiff alleges that the NCAB file is relevant and material in that it evidences that the NCAB decision to allow a $1.2 million contract price increase to Decitron constituted an unauthorized preference under the Armed Services

Procurement Regulations and was a product of arbitrariness and capriciousness. The plaintiff avers that inasmuch as the NCAB file was materially relied upon by him in taking certain actions in his attempt to expose fraud and corruption (which actions he claims were the basis for his dismissal), and since it is necessary to defend the charges of his alleged misconduct, it should be made available to him. Moreover, the plaintiff contends that the NCAB file is needed for effective examination of witnesses before the Regional Appeals Examiner.

Similarly, the plaintiff contends that Volumes II, III and IV plus the attachments to Volume I of the NIG Report should be made available to him. The relevancy and materiality of all four volumes of the NIG Report is said by the plaintiff to be the fact that the Navy Inspector General's investigation did not go into the evidence of fraud against the government by Kurz & Root and Decitron upon which the plaintiff bases his allegations of fraud and thus did not justify the NIG finding that the plaintiff's charges of fraud were unwarranted.

Lastly, the plaintiff claims that he likewise is entitled to the FBI reports pertaining to the Kurz & Root matter and the alleged fraud. The plaintiff bases his claim of relevancy and materiality of the FBI reports on the allegation that these reports, together with certain documentation and sworn testimony, evidence that Kurz & Root used false documents and false testimony to defraud the government. The plaintiff also contends that these reports are needed to effectively examine witnesses to establish at his hearing that the Navy Office of General Counsel took actions to suppress the evidence of Kurz & Root wrongdoing.

It is defendants' position that the plaintiff's appeal to the CSC is still in the discovery stages and that no final determination has been made as to the relevancy and materiality of the documents in question. The defendants contend that the relevancy issue as to the documents in question is a complex one the decision of which should await the development of all the facts in a hearing before the Appeals Examiner. They contend that it is the function of the Regional Appeals Examiner to decide the discovery requests of the plaintiff and that it is reasonable to conclude that if the Navy has not relied on such documents in supporting its position, the documents may not be relevant to the proceedings before the CSC. In any event, it is claimed that a final determination as to the relevancy and materiality of the subject documents in connection with the plaintiff's defense has not yet been made by the Regional Appeals Examiner who has and should deal with the discovery rulings at this stage.

The plaintiff's appeal before the Regional Appeals Examiner is only in the pre-hearing stage. The framing of issues and the relevance and materiality of evidence at this stage are functions clearly within the province of the Regional Appeals Examiner and not for this Court. The Regional Appeals Examiner is fully competent, within the context of facts developed in the appeal, to hear and make discovery rulings. At the present time, the Court cannot and should not evaluate the basis for the Regional Appeals Examiner's preliminary rulings particularly on such matters as the relevance and materiality of documents in the discovery process. Despite plaintiff's allegations to the effect that he is being denied due process and first amendment rights, there is nothing in this record which indicates that this Court should intervene at this time. As stated by the United States Supreme Court in a most recent decision reversing the intervention of an United States District Court in a matter concerning the discharge of a federal employee: "Neither the reviewing jurisdiction of the Civil Service Commission nor that of the District Court would be . . . frustrated by a decision of the District Court remitting respondent to her administrative remedy. Certainly the Civ-

il Service Commission will be able to weigh respondent's contentions and to order necessary relief without the aid of the District Court injunction." Sampson v. Murray, *supra* at 947.

Accordingly, the following Order is entered:

### ORDER

And now, to wit, this 3rd day of April 1974, upon reconsideration of the Defendants' Motion to Dismiss the Complaint and Amended Complaint, it is hereby ordered that said Motion to Dismiss is granted.