**Irving A. KANAREK**
v.
**The UNITED STATES.**
**No. 139–58.**

United States Court of Claims.
May 10, 1968.

Irving A. Kanarek, Van Nuys, Cal., pro se.

Lawrence S. Smith, Washington, D. C., with whom was Asst. Atty. Gen., Edwin L. Weisl, Jr., for defendant.

Before COWEN, Chief Judge and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## OPINION

PER CURIAM:

This case was referred to Trial Commissioner Saul Richard Gamer with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 57(a). The commissioner has done so in an opinion and report filed on February 21, 1967. Exceptions to the commissioner's opinion, findings of fact and recommended conclusion of law were filed by plaintiff and the case has been submitted to the court on the briefs of the parties and oral argument of plaintiff, pro se, and counsel for defendant. Since the court is in agreement with the commissioner's opinion, findings and recommended conclusion of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Therefore, plaintiff is entitled to recover and judgment is entered for plaintiff in the sum of $4,677.52.

## OPINION OF COMMISSIONER

GAMER, Commissioner:

By its decision of March 6, 1963 [1] on defendant's motion to dismiss (which was treated by the court as a motion for summary judgment), the court held that plaintiff was entitled, in accordance with the determination of the administrative agency (the Department of the Air Force), to recover the sum of $4,677.52, being the net amount of back salary plaintiff lost during the period July 12, 1954, when plaintiff's security clearance was suspended, to January 29, 1955, when plaintiff's eligibility to receive further unemployment compensation payments was withrawn by the State of California Department of Employment. The administrative agency denied the balance of

plaintiff's back salary claim in the amount of $5,291.37 covering the period January 30, 1955 to September 21, 1955, the date plaintiff was notified that favorable action had been taken on his appeal and that the suspension of his security clearance had been lifted. The agency determined that, for such latter period, plaintiff had failed to make a satisfactory showing that he was ready, willing, and able to take suitable employment.

By said decision, the court granted defendant's motion and dismissed all of plaintiff's claims set forth in his petition, totaling $163,831, except as to said amount of $4,677.52, to which it held plaintiff to be entitled, and said balance of $5,291.37, upon which it reserved judgment. As to plaintiff's entitlement to said balance, the court remanded "the case to a commissioner for a determination of the unresolved question of whether or not plaintiff actually did attempt to obtain employment in the period January 30, 1955 to September 21, 1955." (314 F.2d at 805, 161 Ct.Cl. at 43–44.)

For the reasons set forth in the following detailed and ultimate findings of fact and conclusions of law, it is concluded that, considering all the facts and circumstances based upon a full review of the record, the administrative agency's action was fair and reasonable and should be sustained, that plaintiff has failed to sustain his burden of proving entitlement to recovery for the period January 30, 1955 to September 21, 1955, and that judgment should be entered for plaintiff in the net amount of $4,677.52, representing gross lost wages of $4,752.52 during the period July 12, 1954 to January 29, 1955, less the amount of $75 earned in other employment during such period.

1. On July 12, 1954, the Department of the Air Force, by the action of the Screening Division of its Western Industrial Personnel Security Board, withdrew plaintiff's authorization for access to Government classified information. As

---

1. 314 F.2d 802, 161 Ct.Cl. 37; plaintiff's motion for reconsideration denied April 17, 1964; plaintiff's petition for a writ

of certiorari denied October 12, 1964 (379 U.S. 838, 85 S.Ct. 74, 13 L.Ed.2d 45).

a consequence, the employment of plaintiff, a research engineer, with North American Aviation, Inc., an Air Force contractor, was suspended, the contractor having previously executed a "Security Agreement" with the Department of the Air Force, acting for the Department of Defense, which required it to take such action under such circumstances. By letter dated September 29, 1954, plaintiff was notified that the Screening Division's action had been affirmed by the Appeal Division of said Board.

2. On November 11, 1954, plaintiff established an "unemployment insurance" claim in the office of the State of California Department of Employment and thereafter drew weekly unemployment compensation from such date to January 29, 1955 in the total amount of $270. The record does not indicate why plaintiff waited until November before establishing such a claim. On the latter date, such payments were terminated. No appeal proceedings were instituted by plaintiff with respect to such cessation.

3. On plaintiff's request, his case was reviewed by the Department of Defense Industrial Personnel Security Review Board which determined that the granting of clearance to plaintiff for access to classified information was clearly consistent with the interests of national security. North American Aviation was so notified by a letter dated September 15, 1955 from the Director of the Department of Defense Office of Industrial Personnel Security Review. On September 21, 1955, plaintiff was also so notified by the receipt of such a letter dated September 16, 1955.

4. (a) Department of Defense Directive No. 5220.6 of February 2, 1955, entitled "Industrial Personnel Security Review Regulation", provided in paragraph 26, headed "Monetary Restitution", that where, in such cases, there was a final determination favorable to an employee of a Department of Defense contractor, the particular Department concerned would reimburse the employee "in an equitable amount for any loss of earnings during the interim resulting directly from a suspension of clearance", such amount not to "exceed the difference between the amount the contractor employee would have earned at the rate he was receiving on the date of suspension and the amount of his interim net earnings."

(b) By letter of October 31, 1955, plaintiff inquired of the Director of the Office of Industrial Personnel Security Review how he could obtain the restitution provided by the directive.

5. Following receipt of information from the Department of Defense as to how to proceed, plaintiff, on December 27, 1955, submitted to the Department of the Air Force, on the required Department of Defense form entitled "Claim for Loss of Wages", a claim in the amount of $9,698.89 for net lost wages from July 12, 1954, the date his security clearance was withdrawn, to September 21, 1955, which plaintiff set forth as the date of the reinstatement of such clearance. Plaintiff listed the total lost wages during the period of the suspension of his security clearance as $10,258.89. In response to a specific inquiry on the form concerning the "Amount of Unemployment Compensation Benefit Payments Received or Due for Period of Your Suspension", plaintiff inserted the figure of $270, and deducted such amount from the total of lost wages, as well as, in response to another question on the form, the amount of $290 in earnings during such interim suspension period, making a net claim of $9,698.89.

6. The California Unemployment Insurance Code in effect at that time (West's Annotated California Codes, Unemployment Insurance §§ 1253, 1256–1258) provided, among other things, that to be eligible to receive weekly unemployment compensation benefits, the claimant must register for work; continue to report to the appropriate public employment office; be able to, and be available for work; and attempt to seek work on his own behalf. Among the causes for disqualification were leaving work voluntarily and without good cause, a dis-

charge for misconduct, refusing to accept suitable employment, or failure to apply for such suitable employment when notified by a public employment office. "Suitable employment" was defined as "work in the individual's usual occupation or for which he is reasonably fitted * * *." For the latter, the risk to health and safety had to be considered, as well as, among other things, the applicant's physical fitness, training, and experience.[2] The Department's regulations defined in detail the action that would be considered as constituting reasonable efforts by a claimant to seek work on his own behalf.[2a]

2. Pertinent parts of said sections of the Code, in effect in 1954 and 1955, are as follows:

"§ 1253. *Eligibility for particular week.* An unemployed individual is eligible to receive unemployment compensation benefits with respect to any week only if the director finds that:

(a) A claim for benefits with respect to that week has been made in accordance with authorized regulations.

(b) He has registered for work, and thereafter continued to report, at a public employment office or such other place as the director may approve. Either or both of the requirements of this subdivision may be waived or altered by authorized regulation as to partially employed individuals attached to regular jobs.

(c) He was able to work and available for work for that week, and had made such effort to seek work on his own behalf as may be required in accordance with such regulations as the director shall prescribe.

(d) He has been unemployed for a waiting period of one week as defined in Section 1254. * * *

\*　　\*　　\*　　\*　　\*

§ 1256. *Disqualification; voluntarily quitting; presumption of discharge; rebuttal of presumption.* An individual is disqualified for unemployment compensation benefits if the director finds that he left his most recent work voluntarily without good cause or that he has been discharged for misconduct connected with his most recent work.

An individual is presumed to have been discharged for reasons other than misconduct in connection with his work and not to have voluntarily left his work without good cause unless his employer has given written notice to the contrary to the director within five days after the termination of service, setting forth facts sufficient to overcome the presumption. If the employer files such notice, the question shall immediately be determined in the same manner as benefit claims. * * *

§ 1257. *Disqualification; falsification; refusal of employment.* An individual is also disqualified for unemployment compensation benefits if:

(a) He wilfully made a false statement or representation or wilfully failed to report a material fact to obtain any unemployment compensation benefits under this division.

(b) He, without good cause, refused to accept suitable employment when offered to him, or failed to apply for suitable employment when notified by a public employment office. * * *

§ 1258. *Suitable employment.* 'Suitable employment' means work in the individual's usual occupation or for which he is reasonably fitted, regardless of whether or not it is subject to this devision.

In determining whether the work is work for which the individual is reasonably fitted, the director shall consider the degree of risk involved to his health, safety, and morals, his physical fitness and prior training, his experience and prior earnings, his length of unemployment and prospects for securing local work in his customary occupation, and the distance of the available work from his residence. Any work offered under such conditions is suitable if it gives to the individual wages at least equal to his weekly benefit amount for total unemployment.

In any particular case in which the director finds it impracticable to apply one of the foregoing standards he may apply any standard which is reasonably calculated to determine what is suitable employment. * * *"

2a. The California Department of Employment regulations relative to termination of benefits for failure to seek work which were in effect at the time plaintiff's benefits were terminated, January 29, 1955, stated as follows:

"1253(c)-1. CLAIMANT'S EFFORTS TO SEEK WORK ON OWN BEHALF

A claimant is ineligible for unemployent compensation benefits for any period for which the Department finds that he has failed to make reasonable effort to seek work on his own behalf. The facts and circumstances in each case shall be considered in determining whether such reasonable effort has been made. The claimant shall be required to show that he has, in addition to registering for

At no time was it the policy or authorized practice of the California Department of Employment to discontinue benefits to an applicant who refused to accept employment far below his educational background level, training, or experience.

7. By letter of March 28, 1956, the Air Force inquired of the California Department of Employment, among other things, why plaintiff's unemployment compensation payments had been terminated on January 29, 1955. However, by letter of April 20, 1956, the Department of Employment replied that it could not supply the information requested because the pertinent State statutes provided that such information was confidential. The Department noted, however, that where back pay awards covered periods during which unemployment benefits had been paid, the amount of the benefits were to be refunded to the State.

8. Plaintiff did not obtain employment of a permanent type until April 9, 1956, when he was employed by the Lockheed Aircraft Corporation as a research engineer. At that time he was given by Lockheed a "confidential" security clearance, a lower type of clearance than he had held with North American Aviation.

9. By letter of July 18, 1956, the Air Force requested plaintiff to submit the pertinent data concerning his receipt of unemployment compensation benefits, including specifically the reason for the cessation of the benefits on January 29, 1955, as well as information pertaining to his efforts to seek employment.

Despite the passage of several letters between the parties, in which the Air Force reiterated its requests concerning the unemployment benefits and plaintiff's attempts to secure employment, plaintiff refused to supply the Air Force with any data concerning his receipt of unemploy-

work pursuant to Section 1326–2 of these regulations, followed a course of action which is reasonably designed to result in his prompt re-employment in suitable work, considering the customary methods of obtaining work in his usual occupation or for which he is reasonably suited, and the current condition of the labor market. Subject to the foregoing, actions of the following kind will be considered reasonable effort to seek work on his own behalf if found by the Department to constitute effective means of seeking work by the particular claimant:

a. Registering with the claimant's union hiring or placement facility.

b. Registering with a placement facility of the claimant's professional organization.

c. Applying for employment with former employers.

d. Making application with such employers who may reasonably be expected to have openings suitable to the claimant.

e. Registering with a placement facility of a school, college, or university if one is available to the claimant in his occupation or profession.

f. Making application or taking examination for openings in the civil service of a governmental unit with reasonable prospects of suitable work for the claimant.

g. Registering for suitable work with a private employment agency, or an employer's placement facility.

h. Responding to appropriate 'want ads' for work which appears suitable to the claimant.

i. Any other action which the Department finds to constitute an effective means of seeking work suitable to the claimant.

No claimant, however, shall be denied benefits solely on the ground that he has failed or refused to register with a private employment agency or any other placement facility which charges the job-seeker a fee for its services.

A claimant shall be deemed to have failed to make a reasonable effort to seek work on his own behalf if the Department finds that he has wilfully followed a course of action designed to discourage prospective employers from hiring him in suitable work.

Notwithstanding any of the foregoing, if the Department finds that for a particular locality, occupation, or class of claimant during a certain interval, the prospects of suitable job openings other than those listed with the public employment service are so remote that any effort to seek work other than by registration for work pursuant to Section 1326–2 of these regulations would be fruitless to the claimant and burdensome to employers, then such registration by the claimant shall be deemed a reasonable effort to seek work on his own behalf.

The provisions of this section do not apply to claimants applying for benefits for a week of partial unemployment."

ment benefits or the reason why they ceased on January 29, 1955. Nor did plaintiff furnish any information concerning any employers from whom he sought work. As set forth in his letter of December 11, 1956, plaintiff took the position that "the queries in the July 18 letter are not pertinent to the adjudication of my claim". Among other things, plaintiff relied on the case of Mendez v. United States, 96 F.Supp. 326, 119 Ct.Cl. 345 (1951), stating that such decision "is not concerned with nor even makes mention at all relative to Mr.Mendez's attempts to obtain employment during this period." Plaintiff stated that unless he received the claimed $9,698.89, he would sue in the Court of Claims for "*all* the damages suffered by me as a proximate result of the withdrawal of my security clearance * * *." [Emphasis in orginal.][3]

10. By letter dated February 26, 1957, the Office of the Judge Advocate General of the Air Force advised plaintiff that, in view of his persistent refusal to answer the questions which the Air Force felt were necessary for a proper adjudication of plaintiff's claim, "the long period during which this claim has been under consideration, and the rather considerable amount of correspondence in the interval, this office has decided to set March 15, 1957 as the latest date upon which administrative processing of our final recommendation to the Secretary of the Air Force will be undertaken. If you elect to answer our previous propounded questions, we shall be pleased to include them in our recommendation."

However, plaintiff did not, by March 15, 1957, answer the questions.

11. (a) Because the Air Force concluded that replies to its previous queries were essential to an equitable disposition of plaintiff's claim, no adjudicatory action was taken with respect thereto, the claim being held in a so-called "open" status.

(b) On April 1, 1958, plaintiff instituted his suit herein seeking damages totaling $163,831.

12. On August 1, 1958, defendant filed a motion to dismiss the petition, which plaintiff, by objections filed November 19, 1958, opposed. In defendant's reply to plaintiff's objections, filed October 14, 1959, defendant made the additional contention that plaintiff, by having refused to furnish the Air Force with the pertinent data concerning his unemployment compensation, had frustrated agency action and had therefore failed to exhaust his administrative remedy, warranting the dismissal of the petition. In the alternative, defendant requested that the suit be suspended and plaintiff directed to pursue his administrative remedy and, in connection therewith, to submit to the Air Force the data it had previously requested. Over plaintiff's objection, and after oral argument, the court, by order dated June 30, 1961, ordered that "further proceedings, including action with regard to defendant's motion to dismiss, be and the same are suspended pending plaintiff's pursuit and completion of the administrative remedy available through the Department of the Air Force which

---

3. *In this exchange of letters, plaintiff,* among other things, (a) asserted a statutory basis for his claim, as against the Department's contrary assertion, and (b) complained about a delay in the delivery of a letter to him.

Also plaintiff had enrolled in the Loyola University School of Law on September 29, 1952 and graduated on June 10, 1956. In the aforesaid letters, the Air Force also inquired of plaintiff whether he had removed himself from the labor market by attending school during

the period of his suspension, but plaintiff satisfactorily answered certain of the Department's questions on this subject, advising that his attendance, except for one course of two credit units during the summer quarter of 1955 (June 20–September 1, 1955) was as a part-time evening student, an activity he had undertaken while he had had full-time employment with North American. The Department verified this information by direct inquiry of the law school.

proceedings are to be instituted and completed within a reasonable time."

13. (a) Upon receipt of the court's order, the Office of the Judge Advocate General, Department of the Air Force, by letter of July 12, 1961, advised plaintiff that, in accordance with the court order, the Air Force would continue to process plaintiff's claim upon receipt of the information previously requested. It again set forth the specific questions it desired answered, including the reason for the termination of the unemployment benefits on January 29, 1955. However, by letter of August 1, 1961, plaintiff failed to furnish the data requested. Plaintiff took the position that the court's order "made no mention" of the claim he had previously filed, and that his claim now consisted of the full damages that he was claiming in his court suit.

(b) By letter of August 4, 1961, the Air Force replied that it had, under the aforesaid directive, authority to consider only a claim for back wages and not for other consequential damages arising from the suspension. It stated that it could therefore only take action, under the court order, on the original $9,698.89 claim which plaintiff had filed, and that, if plaintiff did not submit the information requested by September 15, 1961, "your claim will be considered on the merits upon the basis of available facts." The specific questions to which it desired answers were again set forth.

14. By letter of September 13, 1961, plaintiff did furnish answers to some of the questions. He stated he had been informed by the California Department of Employment "that compensation was terminated", but could not then, because of the lapse of time and his failure to remember, give any further information on this matter, the records pertaining to old claims having been destroyed. He stated, however, that "I do recall that it was suggested that I take dishwashing employment." Specifically as to the reason for the termination of his unemployment benefits on January 29, 1955, plaintiff stated he was, "because of the long passage of time" unable to state the reason. He further stated that: "In any event, it is suggested, that whatever reason might have been stated for the termination of said unemployment benefits was probably different from, and perhaps even unrelated, to the true reason." Plaintiff listed the names of a number of companies with which he had sought employment and stated that "Menial employment such as, for instance, dishwashing was not sought." In answer to the question whether unemployment benefits were ever withdrawn because he refused to accept suitable employment when offered or failed to apply for such employment, plaintiff again responded that "because of the long passage of time, these questions cannot be answered by me with precision" but: "It is suggested that whatever the reason stated may have been for the termination of unemployment compensation payment, the real reason was something else wherein the real reason or alleged real reason was a reflection of the atmosphere at that time. * * * In any event, the alleged reason for termination of unemployment compensation payments would be rank hearsay on the part of an individual, it is suggested, who was influenced by the hysteria and atmosphere at the time. * * * Regardless of the termination of the unemployment compensation payments, I was available for work and able to work at the time said termination occurred. The problem was, it is suggested, that no suitable employment was offered me; as I recall, the only employment actually offered was, as aforesaid, menial in nature such as dishwashing. Furthermore, although much time has passed, I know that when I was notified by the California Department of Employment that there was a possibility for suitable employment, I followed up such possibility."

15. (a) By letter of September 25, 1961, the Office of the Judge Advocate General advised plaintiff that "According to the California Unemployment Insurance Code, it fully appears that your benefits were terminated on 29 January

1955 by the State of California for the reason that you had failed to make a reasonable effort to secure employment in your own behalf." The Office therefore felt that it was necessary for plaintiff to furnish further information concerning his efforts to secure employment during his suspension period, and requested that, in support of plaintiff's assertions that he attempted to secure such employment, plaintiff furnish some supporting "definitive proof", such as any copies of applications he submitted, résumés, or correspondence.

(b) By letter of February 12, 1962, plaintiff responded that the "definitive proof" which the Air Force requested "is simply not obtainable * * * either with the organizations from whom employment was unsuccessfully sought or with myself * * * ." He also advised that the California Department of Employment no longer had any records concerning the matter. He suggested that the Department make its own inquiries of such sources. Plaintiff again, however, sought payment of his claim in the amount of $163,831.

16. (a) On April 16, 1962, the Air Force Judge Advocate General recommended to the Secretary of the Air Force that consideration be given only to that part of plaintiff's $163,831 claim which related to back wages, i. e., plaintiff's original claim of $9,698.89. He stated, among other things, that " * * * it fully appears that claimant's [unemployment] benefits were terminated because he had removed himself from the labor market by failing to diligently seek employment." He noted plaintiff's failure to appeal the State's action in removing plaintiff from the unemployment compensation rolls and his attendance of law school during such period. Despite plaintiff's contention that "he was unable to secure satisfactory employment commensurate with his abilities during

this period and that he remained ready and willing at all times to accept employment of a suitable nature", he concluded that "it appears from all of the information available that claimant was not actively seeking employment subsequent to 29 January 1955 * * * when he became ineligible for unemployment benefits." He therefore recommended to the Secretary that any reimbursement after such date be denied. For the period July 12, 1954 to January 29, 1955, plaintiff's salary would have been $4,752.-52. During such period plaintiff had received $75 in other earnings, making a net amount due of $4,677.52. Since California required repayment, where back wages were awarded, of unemployment benefits during the period involved, the $270 plaintiff received was not added to the deductions. Accordingly, it was recommended that plaintiff be awarded the net amount of $4,677.52, and that the balance of plaintiff's claim, in the amount of $5,291.37, be denied.[4]

(b) On April 19, 1962, the Secretary of the Air Force approved payment of said amount of $4,677.52 "subject to acceptance by the claimant in full satisfaction and final settlement." By letter of the same date, plaintiff was so advised. The letter stated that "After considering all the facts, it was determined that your entitlement to reimbursement should be limited to the period from 12 July 1954 to 29 January 1955", it being concluded "that any entitlement for the period thereafter should be disapproved since you had failed to furnish satisfactory evidence to reasonably demonstrate a diligent interest in securing employment and availability therefor." The letter further stated that " * * * it was considered significant that your unemployment benefits were terminated by the State of California on 29 January 1955 ostensibly for the reason that you had

---

4. The agency treated plaintiff's claim as $270 more than he actually claimed because it did not, as did plaintiff, deduct the unemployment compensation payments he received. Thus, the total lost wages for the period involved was $10,258.89. Deducting the $290 outside earnings made a net claim of $9,968.89. The amount awarded was $4,677.52, leaving a balance of $5,291.37.

failed to qualify therefor under its unemployment insurance code and that you did not contest or otherwise dispute this action", and that "Under these circumstances, there was no alternative except to deny any reimbursement claimed for the period 30 January 1955 to 21 September 1955." Plaintiff was advised that if he accepted the amount of $4,677.52 in full satisfaction and final settlement of his claim, a check in such amount would be issued.

(c) By letter of May 17, 1962, plaintiff rejected the offer of $4,677.52, and reasserted his claim in the amount of $163,831.

17. On July 23, 1962, plaintiff moved that, since the amount found due to him administratively was unacceptable to him, the suspension of the proceedings on defendant's motion to dismiss be lifted and that the motion be calendared for further argument. By order of August 3, 1962, the motion was allowed. At the second oral argument, plaintiff was given permission to file an affidavit concerning his efforts to obtain employment. Such an affidavit was filed on February 5, 1963, in which plaintiff listed various companies with which he sought employment during the period July 12, 1954 until April 9, 1956, when he secured employment with Lockheed. He further stated that he was "informed and believes" that the reason he was denied unemployment benefits after January 29, 1955 "was because of his refusal to take menial labor, such as dishwashing * * *," which the Department suggested he take, the Department personnel having "equated the withdrawal of Security Clearance with one being a Communist and a disloyal American."

18. By decision of March 6, 1963 (314 F.2d 802, 161 Ct.Cl. 37), the court ruled that plaintiff was entitled to recover $4,677.52, constituting lost wages for the period July 12, 1954 to January 29, 1955, as allowed by the administrative determination, but that, as a result of plaintiff's affidavit submitted after the oral argument, a question of fact existed concerning whether plaintiff actually did attempt to obtain employment during the period January 30, 1955 to September 21, 1955. The court remanded the issue to a commissioner for the determination of such "unresolved question." The court further stated that plaintiff's claim was not to be prejudiced by his failure to accept or seek menial employment, such as dishwashing. In all other respects, plaintiff's petition was dismissed. Plaintiff's motion for reconsideration was denied on April 17, 1964, and his petition for certiorari on October 12, 1964 (379 U.S. 838, 85 S.Ct. 74, 13 L.Ed.2d 45).

19. At the trial held in Los Angeles, California, on July 7, 1965, plaintiff himself was the only witness in his behalf. He did testify that he had, during the period in question, sought employment commensurate with his educational background and experience. However, the testimony was otherwise unsupported. No documents or exhibits, such as copies of letters or applications for employment, were introduced. Plaintiff testified he retained no such copies. He did not enlighten the court with respect to the "unresolved question" in any respect that added to the affidavit he had filed with the court on February 5, 1963. Actually, plaintiff's case at the trial in effect consisted only of such affidavit, which plaintiff adopted as his testimony and his proof. (Tr. 17–20; 51.)

Defendant's evidence consisted of a witness from the California Department of Employment. He testified that as a matter of policy, case records are retained only three years after the expiration of the benefit year, so that plaintiff's records are no longer in existence. He further testified that as a matter of policy and practice, the Department at no time required a man to take work far below his educational background level; that the suspension of security clearance in no way affected an applicant's eligibility to draw compensation (although it might affect his availability for employment); and that benefits could not be terminated without cause.

## ULTIMATE FINDINGS AND CONCLUSIONS

20. Plaintiff's conduct before the agency in effect frustrated the administrative process. In 1955, when he first applied to the agency for the restitution of his lost wages, a remedy which the agency had the power to provide (finding 4) and for which he now sues in this court, as well as in 1956 when the agency was processing his claim (findings 7, 9), plaintiff took the position that the reason the State of California terminated his unemployment compensation payments was not pertinent or relevant to the issue of his right to receive back salary (finding 9). His contention apparently was that there was no legal obligation on anyone in his position even to attempt to obtain employment, and relied on the *Mendez* case, supra (finding 9), for this proposition, stating that that case "is not concerned with nor even makes mention at all relative to Mr. Mendez's attempts to obtain employment" (finding 9). At that time, although plaintiff well knew the reasons why the State had removed him from the compensation rolls, he refused to inform the agency, despite the agency's numerous specific requests therefor. The agency itself found it was unable, because of confidentiality requirements, to obtain the information directly from the State's Department of Employment.

21. (a) Plaintiff erred when he contended the agency's questions as to why he was removed from the unemployment compensation rolls were not pertinent or relevant to the issue. The basic statutory reasons for the removal of applicants from the compensation rolls were their refusal or failure to make a reasonable effort to seek work on their own or to accept or attempt to obtain suitable employment to which they were referred by the Department of Employment (finding 6). Under the Department of Employment's regulations, a claimant, in order to remain eligible, had to show that he had "followed a course of action which is reasonably designed to result in his prompt re-employment in suitable work, considering the customary methods of obtaining work in his usual occupation or for which he is reasonably suited, and the current condition of the labor market." Applicants could not arbitrarily be removed from the compensation rolls without cause, the bases for such removal being spelled out in detail. The fair inference is that plaintiff had taken some voluntary action to disqualify himself by, in effect, removing himself from the labor market. The inference is fortified by plaintiff's failure to appeal or otherwise contest the action of the State in terminating the payments. At the least, plaintiff owed the administrative agency an explanation, which he could have easily given since he was then in full possession of the facts. And the Department of Employment's records were then in existence if resort to them was necessary.

■■ The restitution directive provides for payment of loss of earnings "resulting directly from a suspension of clearance" (finding 4(a)). It directs that interim net earnings be deducted from the award. One who takes voluntary action which prevents employment and the accrual of outside earnings obviously does not qualify. A showing that one is ready, willing, and able to work at suitable employment during the interim period is normally a prerequisite to a back salary award. Graves v. United States, 176 Ct.Cl. 68 (1966); Armand v. United States, 136 Ct.Cl. 339 (1956). In conformity with the rule applicable to discharged employees generally, one suspended for security reasons must also attempt to mitigate damages by making a reasonable effort to secure other employment, Schwartz v. United States, 181 F.Supp. 408, 149 Ct.Cl. 145 (1960), the rule being particularly applicable where the back pay compensation provisions specifically require, as they do here, a deduction of interim earnings. Id.

■ Accordingly, the questions asked by the administrative agency were relevant and proper and plaintiff's refusal to supply the information amounted to a frustration of the administrative process.

(b) The *Mendez* case upon which plaintiff relied is not to the contrary. No question was raised in that case such as is here involved. The issue there was only whether Mendez's removal was "unjustified or unwarranted" within the meaning of a statute allowing back pay compensation for such removals.

■ 22. In the exhaustion of his administrative remedy, plaintiff had a duty to cooperate fully with the agency so that it would be in a position to make a rational disposition of his claim and thus possibly avoid burdening the courts with unnecessary litigation. When the court, by its order of June 30, 1961, suspended proceedings on defendant's motion to dismiss and directed plaintiff to exhaust his administrative remedy (finding 12), it must have similarly concluded, despite its decision to give plaintiff another chance. However, on his return to the agency pursuant to the court's order, plaintiff now claimed that, due to the passage of time, he could not remember the reason for his removal from the rolls in January 1955 (finding 14). By that time, the Department of Employment had, in normal routine, destroyed the records in plaintiff's case. Plaintiff "suggested" that whatever reason the Department then offered was not the real reason anyway, but instead was grounded on the hysteria of the times. Plaintiff stated that the Department of Employment suggested he take dishwashing employment but that he refused to seek such menial employment. The pertinent California statutes, and the State Department of Employment's implementing regulations, negate this suggestion. The regulations specifically provide that "[m]aking application with such employers who may reasonably be expected to have openings suitable to the claimant" would be considered by the Department as making a reasonable effort to obtain employment, and thus to constitute sufficient compliance to assure continuance of entitlement to benefits.

Under the circumstances, the administrative agency was justified in refusing to accept such suggested reason for plaintiff's removal from the compensation rolls and in awarding plaintiff back salary only up to January 29, 1955, the date he was so removed.

23. On the basis of the entire record, it is concluded that plaintiff was not removed from the unemployment compensation rolls because of any suggestions or insistence by the California Department of Employment that he seek or take such menial employment as dishwashing.

24. When the court ordered the "unresolved question" of plaintiff's efforts to obtain employment during the period January 30, 1955–September 21, 1955, to trial (finding 18), it must have concluded that the affidavit plaintiff had submitted to it on February 5, 1963 after the second oral argument on defendant's motion to dismiss (finding 17), including the general, unsupported, self-serving statements contained therein to the effect that he had sought employment during such period, was an insufficient basis upon which to predicate a judgment for back wages for such period. However, at the trial, plaintiff merely rested his case on such affidavit (finding 19). Thus plaintiff's case is in no different posture now than it was when it was submitted to the court on defendant's motion to dismiss. Plaintiff is no more entitled to a judgment for such period now than he was then.

Although plaintiff's feelings are, considering the devastating effects of his experience, quite understandable, nevertheless plaintiff in effect delivered an ultimatum to the agency to pay his back wage claim without asking any questions else he would sue, in a far greater amount, for "all" his "damages". And now that the court has dismissed all claims asserted other than his back wage claim, the pertinent questions the agency asked over 10 years ago still remain, due to plaintiff's original attitude, unanswered.

25. Plaintiff has failed to carry his burden of proving that he was, during the period January 30, 1955 to September 21, 1955, ready, willing, and able to accept suitable employment.

26. The administrative agency acted reasonably and was justified in limiting plaintiff's award of back salary to $4,-677.52 (finding 16).

 27. Such amount of $4,677.52, to which the court by its decision of March 6, 1963, held plaintiff to be entitled, is the total amount plaintiff is entitled to recover.

### CONCLUSION OF LAW

Upon the foregoing findings of fact and conclusions of law, which are adopted by the court and made a part of the judgment herein, the court concludes as a matter of law that plaintiff is entitled to recover in the amount of four thousand six hundred seventy-seven dollars and fifty-two cents ($4,677.52), and judgment is entered for plaintiff in this amount.