Leverett C. BURKE and James E.
Mole, Plaintiffs,

v.

William GREEN et al., Defendants.

Civ. A. No. 72–2365.

United States District Court,
E. D. Pennsylvania.

June 18, 1976.

Melvin Brookman, III, Shein & Brookman, Philadelphia, Pa., for plaintiffs.

Richard J. Stout, Richard S. Hoffman, Regional Counsel, U. S. Bureau of Customs, Dept. of Treasury, Baltimore, Md., for defendants.

## OPINION

A. LEON HIGGINBOTHAM, Jr., District Judge.

### INTRODUCTION

This action arises as a result of an alleged violation of plaintiffs' Fifth Amendment rights. Jurisdiction was alleged in the original Complaint under Title 28 of the United States Code, Section 1346(a)(2). The defendants have moved to dismiss this action for want of jurisdiction under Rule 12(b)(1) and, for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. However, since affidavits, exhibits and depositions were submitted in support of both the defendants' motion to dismiss and briefs in opposition thereto, said motion is also, in effect, a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

After consideration of the materials submitted by the parties, I shall grant defendants' motion for summary judgment with respect to all allegations appearing in the Amended Complaint; the Amended Complaint is hereby dismissed with prejudice. This Court lacks jurisdiction over those allegations in the Amended Complaint arising from a dispute over back pay because of plaintiffs' failure to first exhaust their administrative remedies. Secondly, those allegations in the Amended Complaint premised on the failure of Special Customs Agents, prior to interrogating the plaintiffs, to administer warnings in accordance with the guidelines set forth in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (hereafter "Miranda"), fail to state a cause of action upon which relief may be granted.

Plaintiffs, Leverett C. Burke and James E. Mole, are officers of the United States Bureau of Customs (hereafter "Bureau"). They resigned from the Bureau following the alleged disappearance, on or about February 22, 1972, of five hundred dollars. The money had been seized and retained by the Bureau, and stored in a locker to which both plaintiffs allegedly had access at the time the money was discovered missing. The plaintiffs, as well as other Bureau personnel, were questioned in connection with an investigation about the missing money. Plaintiffs assert that their Fifth Amendment rights were violated by three Customs Special Agents, defendants Delaney, Farrell and Green, who interrogated Burke and Mole without first advising them of their right to remain silent in accordance with the procedure outlined in *Miranda*. Plaintiffs also contend that their resignations, procured as a result of these allegedly unconstitutional interrogations, were involuntary.

The plaintiffs, as well as Special Agent Donald Chase and Customs Port Officer Joseph Carpiak, were first interviewed concerning the missing money on March 2, 1972.[1] The investigation was conducted by defendants Delaney, Farrell and Green. Prior to any questioning, one of these three agents explained to plaintiffs the purpose of the interview and their obligation as Bureau employees, under § 27.39 ¶ J of the Customs Manual, to answer questions posed in the interview. Burke and Mole were informed that any refusal to answer the questions of the investigating agents would be reported to personnel with the possibility that the obstinate employees would be subject to discipline.[2] It was not until after these instructions were given that plaintiffs, on March 22, 1972, executed consent forms agreeing to undergo polygraph examinations.[3] At different times, each plaintiff reported to a designated motel for the purpose of taking the polygraph examination.[4] No warning of the right to remain silent was given prior to either the administration of each plaintiff's test or the interrogation of the plaintiffs. After taking the exam, each plaintiff was escorted to a room where he was questioned by two, and sometimes three, armed Special Agents. The dialogue between each plaintiff and the Special Agents, including time spent during the polygraph exam, continued for more than two and one-half hours. The interrogating officers apparently began their second interview of Burke and Mole, subsequent to the administration of the polygraph tests, with the assertion that the polygraphs revealed deception on the part of the plaintiffs. After some questioning,

---

1. Deposition of Edward T. Coyne, Senior Resident Agent, 11.

2. Deposition of William Green, Special Customs Agent, 38–40.

3. Defendants' Exhibit L, at 6–10.

4. Burke took only one polygraph examination which was administered on March 22, 1972. Mole, pursuant to his request, took two polygraph exams—one on March 22nd and the second on March 23, 1972. Despite a request for production of the actual tests by plaintiffs' counsel prior to the hearing before the Board of Appeals and Review, the polygraph tests were not produced. The tests, in fact, have not been turned over to this date, although plaintiffs' counsel had the opportunity to review the transcript of the polygraph exam.

and a second polygraph test taken by Mole, each plaintiff resigned.

The plaintiffs appealed to the United States Civil Service Commission on the grounds that their resignations were involuntary and obtained in violation of the Supreme Court's mandate in *Miranda*. On December 10, 1973, the Board of Appeals and Review (hereafter "Board"), while rejecting the contention that plaintiffs were entitled to *Miranda* warnings prior to any interrogation,[5] agreed that the resignations were involuntary and ordered their reinstatement in their former capacities with back pay retroactive to March, 1972. The Board's order, made mandatory on the Bureau by a Civil Service Commission regulation, 5 C.F.R. § 752.401,[6] required that corrective action be taken within ten days of the receipt of the decision. Plaintiffs con-

tend that the Board's order was deliberately violated when their reinstatement was not effected until December 27, 1973, seventeen days after the Board's decision was rendered. The Regional Director of the Personnel Management Division of the Bureau, defendant Richard A. Finley, Jr., received the Board's decision on the above date and immediately restored plaintiffs to their previous status in the Bureau.

Plaintiffs also allege a conspiracy calculated to deprive them of their back pay for a period in excess of ten months on the part of defendants Reed, Moore, Van Pelt, John Doe, and Roe.[7] More specifically, plaintiffs aver that the above defendants failed to implement in a timely fashion the mandates of the Back Pay Act of 1966, 5 U.S.C. § 5596,[8] the regulations promulgated thereunder[9] and, the Internal Revenue Service

---

**5.** The Board specifically found that:

According to the record before the Board, no criminal act was established and no one was prosecuted for performing such act. Thus, we must agree that the appellants here were not the subject of a criminal investigation requiring "Miranda" warnings and they were not in a custodial interrogation situation. They were only involved in preliminary investigative matters. No specific charges of criminal activity had been made against them or anyone else. In fact, the one resignation was obtained not as a result of any fear of criminal prosecution with regard to the missing $500 but as a result of the disclosure that the employee might be removed for falsification of his application, a matter totally unrelated to the investigation.

Defendants' Exhibit 1, at 3.

**6.** 5 C.F.R. § 752.401 reads as follows:

§ 752.401 Agency action when Commission recommends restoration or other corrective action.

It is mandatory that the agency take all corrective action recommended in the decision of the Commission office having appellate jurisdiction unless the agency petitions the Appeals Review Board to reopen and reconsider the decision under § 772.310 of this chapter.

**7.** Plaintiffs in a motion to amend their amended complaint, filed on March 30, 1976, ask that defendant Richard A. Finley, Jr. be substituted for the party named Roe.

**8.** The Back Pay Act, in relevant part, provides as follows:

(b) An employee of an agency who, on the basis of an administrative determination or a

timely appeal, is found by appropriate authority under applicable law or regulation to have undergone an unjustified or unwarranted personnel action that has resulted in the withdrawal or reduction of all or a part of the pay, allowances, or differentials of the employee—

(1) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect an amount equal to all or any part of the pay, allowances, or differentials, as applicable, that the employee normally would have earned during that period if the personnel action had not occurred, less any amounts earned by him through other employment during that period; and

(2) for all purposes, is deemed to have performed service for the agency during that period, except that the employee may not be credited, under this section, leave in an amount that would cause the amount of leave to his credit to exceed the maximum amount of the leave authorized for the employee by law or regulation.

**9.** The relevant regulation promulgated by the Civil Service Commission under the Back Pay Act, is § 550.804, which reads, in pertinent part, as follows:

§ 550.804 Corrective action.

(a) When an appropriate authority corrects an unjustified or unwarranted personnel action, *the agency shall recompute for the period covered by the corrective action the pay, allowances, differentials, and leave account (limiting the accumulation to the maximum prescribed by law or regulation for the employee)* of the employee as if the un-

Manual Transmittal § 0550.54(4).[10] Defendants' Exhibit O, at 2. Apparently, a dispute arose in the calculation of the exact amount of back pay due the plaintiffs. Burke and Mole requested an appeal in accordance with the Internal Revenue Service's procedures in order to settle the dispute. A review under I.R.S. procedures had to be triggered by the administrative agency with which the employee had a back pay dispute. The request to follow the suggested procedure was denied by defendant Fenner, who insisted that any dispute over the amount of back pay should be directed to the Bureau Headquarters in Washington, D. C. Defendants' Exhibit 26. This alternative form of relief was never pursued by plaintiffs. On October 7, 1974, checks were issued to the plaintiffs which included reimbursement for back pay. The dispute as to the amount still due the plaintiffs remains unresolved.

> justified or unwarranted personnel action had not occurred and the employee shall be deemed for all purposes to have rendered service in the agency for the period covered by the corrective action. In making its computation under this paragraph, an agency shall not include as allowances any amount which represents reimbursement for expenses which would have been incurred by an employee in the performance of his job if the unjustified or unwarranted personnel action had not occurred but which were not incurred because of the unjustified or unwarranted personnel action but shall include other allowances which are a form of remuneration to the employee for services that otherwise would have been rendered in the job.
>     (b) In recomputing the pay, allowances, differentials, and leave account of an employee under paragraph (a) of this section, the agency shall include the following:
>     (1) Premium pay which the employee would have received had it not been for the unjustified or unwarranted personnel action;
>     (2) Changes in pay rates by reason of wage surveys, administrative action, law, or other changes of general application;
>     (3) Changes in allowance or differential rates;
>     (4) Within-grade or step increases or other periodic increases which would otherwise have become due;

## JURISDICTION UNDER THE BACK PAY ACT

Plaintiffs' Complaint raises the following jurisdictional issues: does this Court have the authority to consider plaintiffs' claim for damages allegedly occasioned by federal officers' delay in processing back pay for Burke and Mole? May this Court consider the plaintiffs' claim for damages based on the federal officers' refusal to follow the appeal procedures found in the Internal Revenue Service's Manual Transmittal?

▆▆▆ By virtue of a 1964 amendment to 28 U.S.C. § 1346, district courts now possess concurrent jurisdiction with the court of claims over civil actions to recover fees, salary, or compensation for official services of officers or employees of the United States. Act of August 30, 1964, P.L. 88–519, 78 Stat. 699. However, plaintiffs in this case have prayed for damages in excess of the ten thousand dollar jurisdictional

> (5) Changes in pay caused by changes in assigned working shifts;
>     (6) Changes in the employee's leave earning rate; and
>     (7) Any other changes which would affect the amount of pay, allowances, differentials or leave which the employee would have earned had it not been for the unjustified or unwarranted personnel action.
> 5 C.F.R. § 550.804 (emphasis added).

**10.** Internal Revenue Manual Transmittal, MT 0500–13 (4–27–73), § 0550.54(4) reads as follows:

> If the employee (or former employee) and the servicing Personnel Office do not agree on the former's eligibility for back pay or items to be included in or deducted from the back pay, the Personnel Office should present the question in writing, through channels, up to the Personnel Division, National Office. If the answer secured from the National Office is unfavorable to the employee, he should be informed of the answer in writing; that it is the Internal Revenue Service's final judgment on the matter; and, if he is not satisfied with the answer, he may file a claim with the General Accounting Office, 441 G Street, N.W., Washington, D.C. 20548.

amount, so that the Court is precluded from exercising jurisdiction under § 1346(a)(2). The plaintiffs have not requested that the Court compel the performance of any act by an officer or employee of the United States, so that jurisdiction does not exist under the Mandamus Act. 28 U.S.C. § 1361.[11] Finally, the Third Circuit has ruled that Section 702[12] of the Administrative Procedure Act does not provide an independent basis for extending the jurisdiction of the district court to claims outside of the purview of other jurisdictional statutes. *Local 542, International Union of Operating Engineers v. N.L.R.B.*, 328 F.2d 850 (3d Cir.), *cert. denied* 379 U.S. 826, 85 S.Ct. 52, 13 L.Ed.2d 35 (1964); see *Charlton v. United States*, 412 F.2d 390, 396 (3d Cir. 1969) (Stahl, J., concurring). So if this Court has jurisdiction over this back pay dispute, it is under general federal question jurisdiction, 28 U.S.C. § 1331. The Court declines to exercise § 1331 jurisdiction.

■ The Court, at this time, is not in a position to say that the actions of the defendants Reed, Doe, Moore, Van Pelt and Roe did not conform to the requirements of the Back Pay Act of 1966. The attempt of plaintiffs, to judicially enforce under § 1331 the important rights created by that act, is futile because of a failure to exhaust their administrative remedies. The Court of Appeals for the Third Circuit recently reiterated the importance of prior exhaustion of administrative remedies in *Barnes v. Chatterton*, 515 F.2d 916, 920 (3d Cir. 1975). The plaintiff in that action was a discharged naval employee seeking, among other remedies, to enjoin a Civil Service Commission hearing on the merits of his unlawful discharge claim and to compel the Navy to produce requested documents for his administrative hearings. The Court, in an opinion authored by Judge Rosenn, denied the requested relief and explained the doctrine of exhaustion of administrative remedies. Judge Rosenn opined that the doctrine:

. . . evolved after substantial experience, is conducive to efficient disposition of administrative proceedings and to effective judicial review. . . . As with most judicially created doctrines, there are judicially created exceptions. A party need not await a final agency decision *if the preliminary agency decision clearly and unambiguously violates statutory or constitutional rights,* (citation omitted) *or "if the prescribed administrative procedure is* clearly shown to be *inadequate to prevent irreparable injury." American Fed'n of Gov't Employees, Local 1004 [sic—1904] v. Resor,* 442 F.2d 993, 994–95 (3d Cir. 1971) (emphasis added).

In this action the plaintiffs allege that the actions of the above defendants violated their statutory right to receive back pay after an appropriate authority, the Civil Service Commission, had determined that the Bureau's adverse personnel action was unwarranted. However, an examination of the Back Pay Act reveals that there is no clear violation of a statutory right in this case.

Apparently the back pay dispute concerns hotel, restaurant, travel and other expenses allegedly incurred in plaintiffs' interim employment during the period when their resignations were effective. Letter from Mr. Brookman, Plaintiffs' Attorney, to Richard A. Finley, Jr., defendant, Defendants' Exhibit 25, at 2. Plaintiffs contend that those expenses listed above, for which they would

---

11. Section 1361 provides:

    § 1361. Action to compel an officer of the United States to perform his duty.
    The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

12. 5 U.S.C. § 702 provides as follows:

Right of Review—A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.
The Supreme Court has not yet determined whether the judicial review provisions of the Administrative Procedure Act confer independent jurisdiction on the district courts. *Tooahnippah (Goombi) v. Hickel,* 397 U.S. 598, 90 S.Ct. 1316, 25 L.Ed.2d 600 (1970).

have been reimbursed by the Government had they remained in its employ, should be included in the back pay allowance forthcoming from the agency. It is evident, after examination of both the pertinent regulation under the Back Pay Act and the Comptroller General's decision upon which the agency relied in making its determination, that the method used to calculate the plaintiffs' back pay award *was not in clear violation* of the Back Pay Act. 5 C.F.R. § 550.804, implementing the Back Pay Act, mandates that the agency shall not include in its back pay award an allowance for expenses which would have been reimbursed if incurred by the employee in the performance of his agency job, but were not incurred because of the unjustified personnel action taken by the agency.[13] The lack of a clear violation of the Back Pay Act on the part of the agency is also apparent upon review of a 1961 decision of the Comptroller General. The Comptroller General held that:

> . . . allowance for hotel, restaurant, travel, and other expenses incurred in connection with the successful appeal of separation before the Civil Service Commission, as well as the excess cost of living at the place of interim employment over what the cost would have been at the former employment place, is neither expressly nor impliedly authorized to be considered either as credits to compensation or as debits against earnings from employment.

40 Decisions of the Comptroller General 479 (1961) (interpreting section 6(b) 3 of the Act of August 24, 1912—replaced by the Back Pay Act). Unless the clear statutory violation which would warrant court intervention prior to final agency decision was committed by Mr. Finley, the plaintiffs are not aided in their attempt to secure judicial review of their back pay grievance at this point in time. If Finley had not complied with the terms of the Board's order, such disobedience would be a clear violation of 5 C.F.R. § 752.401,[14] making compliance with

the Board's decision mandatory for the agency taking the prior unwarranted action against its employee. Such an unambiguous violation of a statutory right would obviate the need for final agency decision under the exception enunciated by the Third Circuit in *Barnes*. *Barnes* involved an action brought by a discharged Navy employee seeking court-ordered production of certain Navy documents for use in his administrative hearing in which he was contesting the validity of his discharge. The Court opined that the defendant Hearing Examiner, under 5 C.F.R. § 772.304(c), had a duty to consider the relevance of the documents requested by the plaintiff. A failure to ponder the relevancy of the requested materials would have constituted possible grounds for judicial intervention prior to final agency action. However, the Court held that the Hearing Examiner had discharged his duty under the regulation, so that premature intervention by the judiciary was not warranted. 515 F.2d at 920. In this case, as in *Barnes*, defendant Finley has discharged his obligation under 5 C.F.R. § 752.401; there is no need for premature intervention by this Court.

The implementation language in the Board of Appeals and Review's December 10, 1973 decision was as follows:

### IMPLEMENTATION OF THE BOARD'S DECISION

> Under Section 772.307(c) of the Civil Service Regulations, the Board's decision is mandatory and the administrative officer of the agency shall take the corrective action recommended. The appropriate administrative officer is requested to furnish the Board of Appeals and Review within ten days after *receipt* of this decision a copy of the official notification of personnel action . . . documenting compliance with this decision. (emphasis added).

Defendants' Exhibit 1, at 6. Notice of the Board's decision was first sent to Mr. Edward Coyne, Senior Resident Agent, and

---

13. See footnote 8, supra, at 353.

14. The regulation appears in footnote 6, supra, at 353.

supervisor for the plaintiffs. Apparently Mr. Coyne had no authority to take any corrective action, and thus was not the "appropriate administrative officer" specified in the Board's order. The first recipient of the Board's decision who could be characterized as an appropriate person to take corrective action, would be defendant Joseph Van Pelt, who did not hear of the Board's action until December 17, 1973. He did not receive a copy of the Board's opinion until the twenty-seventh of December, 1973.

Mr. Finley initiated corrective action to restore plaintiffs to their former positions on December 27, 1973. The Board's decision, while issued on December 10, 1973, was not received by Mr. Finley from Mr. Coyne until the twenty-seventh of that month. The ten day period for corrective action begins to run only upon *receipt* of the Board's determination.

Even if the ten day period began to run on December 17, 1973, the date on which Mr. Van Pelt became aware of the Board's decision, Mr. Finley still fulfilled the terms of the Board's order. Consequently, since Mr. Finley complied with the time requirements included in the Board's order, there was no clear violation of the regulation warranting judicial intervention prior to final agency determination of the back pay matter.

Furthermore, the Back Pay Act provides for its mandates to be implemented by Civil Service regulation.[15] The Civil Service Commission has not designated any procedure for the appeal of back pay calculations other than that stated by Fenner; the Internal Revenue Service's procedure is not established as an exclusive method of review.

An analogy can be drawn between the plaintiffs' insistence on adherence to the Internal Revenue Service regulation in the resolution of their back wage dispute and the stance adopted by the plaintiff in *Kanarek v. U. S.,* 394 F.2d 525, 184 Ct.Cl. 125

(1968). The plaintiff in *Kanarek* was a research engineer whose security clearance was wrongfully revoked by the Department of the Air Force. After a review board determined that a grant of security clearance to the plaintiff was consistent with national security interests, plaintiff was entitled to back salary lost during the interim when his security clearance was suspended. However, in order to qualify for reimbursement, plaintiff was required to demonstrate his efforts to secure suitable employment while his security clearance was held in abeyance. Plaintiff refused to supply data on his experience with the Department of Employment of the State of California. That agency struck plaintiff from the rolls of those persons entitled to receive weekly unemployment compensation benefits. Plaintiff withheld information on the basis for the state agency's action on the grounds that such information was not pertinent or relevant to the determination of his entitlement to back pay. The Court of Claims concluded that the refusal to supply such data "in effect frustrated the administrative process." 394 F.2d at 534. The agency, therefore, found itself unable to make a rational disposition of plaintiff's claim. The court specifically found that:

> In the exhaustion of his administrative remedy, plaintiff *had a duty to cooperate fully with the agency* so that it would be in a position to make a rational disposition of his claim *and thus possibly avoid burdening the courts with unnecessary litigation.*

*Kanarek, supra,* at 535 (emphasis added). Just as in *Kanarek,* the plaintiffs in this case delivered an ultimatum to the agency. Burke and Mole demanded that the agency honor their claims for back wages in full and if the agency figure fell short of the amount demanded the dispute was to be resolved, not by resort to the review process suggested by the agency, but rather in accordance with the procedure suggested by the plaintiffs. Such grandstanding does

---

**15.** 5 U.S.C. § 5596(c) provides in part that "The Civil Service Commission shall prescribe regulations to carry out this section."

not promote the avoidance of unnecessary court litigation.

■ Since there is no clear violation of the Back Pay Act, the plaintiffs must demonstrate that the prescribed administrative procedure is inadequate to ward off irreparable injury in order to cause the Court to intervene at this stage of the dispute. Such a showing had not been made, despite the volume of documents submitted by both parties for consideration in the disposition of this motion. First, the procedure designated by the Bureau is facially reasonable and has not been shown to be inadequate in any way. One regulation promulgated by the Civil Service Commission under the Back Pay Act demonstrates the reasonableness of the procedure suggested by the agency for review of its back pay award.

Under 5 C.F.R. § 550.804,[16] the administrative agency which took the unwarranted personnel action, and not the Internal Revenue Service, has the primary responsibility to recompute the back pay allowance for the period covered by the corrective action. Upon a literal reading of the Commission's regulation, the Bureau retains that authority despite the fact that the Internal Revenue Service's Fiscal Division computes the amount of pay pay. See Deposition of Kenneth R. Fenner, Jr., at 11. Any dispute over the amount of back pay calculated by the Internal Revenue Service thus could reasonably be reviewed by the Bureau rather than the Internal Revenue Service. The testimony submitted to this Court in support of the defendants' motion to dismiss as well as the Court's review of the relevant statutes and regulations reveals that there is no United States statute, Civil Service Commission regulation, Federal Personnel Manual, Customs Personnel Manual or Bureau regulation which makes the Internal Revenue procedures binding on the Bureau. Deposition of Kenneth R. Fenner, Jr., at 63. In the absence of such authority, the agency's determination of the proper administrative procedure for review of disputed claims should be followed. This Court cannot substitute its judgment for administra-

tive expertise and discretion. cf. See *Iannarelli v. Morton*, 327 F.Supp. 873 (E.D.Pa. 1971) (Higginbotham, A. L., J.).

■ Secondly, the plaintiffs will suffer no irreparable injury by following the procedure suggested by the Bureau. Any final calculation of back pay by the agency is open to judicial review. *Barnes, supra*, at 921. A district court can review the final determination of the agency through a petition for mandamus, 28 U.S.C. § 1361, or under the court's general federal question jurisdiction, 28 U.S.C. § 1331. If the plaintiffs' claims for back pay are under ten thousand dollars, jurisdiction will also lie under 28 U.S.C. § 1346. Finally, the plaintiffs have access to the court of claims under 28 U.S.C. § 1491 for damages in excess of ten thousand dollars after a final administrative determination. As in the district court's opinion in *Barnes*, at 375 F.Supp. 198, 205 (E.D.Pa.1974), the Court finds in this case that:

. . . the interpretation and application of regulations should rest in the first instance with the administrative agency and a court on review should not substitute its views for those of the agency in connection with the interpretation and application of regulations unless the interpretation and application of the regulations are unreasonable, arbitrary, or capricious. 375 F.Supp. at 205.

The Court requires the benefit of the enlightened judgment of the Bureau as to the application of Civil Service Commission Regulation § 550.804.

Because the Court declines to accept jurisdiction over plaintiffs' claims found in paragraphs 20 and 21 of the Amended Complaint, I need not consider whether there is a failure to state a cause of action for conspiracy. Furthermore, I need not make a ruling with respect to the defendants' contention that this Court lacks personal jurisdictional over defendants Dulaney, Farrell, Reed, Finley, Jr., and Van Pelt because of plaintiff's failure to serve process in accordance with Rule 4(d)(1) of the Federal Rules of Civil Procedure.

---

16. The regulation appears in footnote 8, supra, at 353.

## PLAINTIFFS' ATTEMPT TO AMEND THEIR COMPLAINT

Plaintiffs have recently submitted a request to further amend their Amended Complaint. The proposed amendments raise the following issue: do the proposed amendments vest jurisdiction in this Court over those allegations in the Amended Complaint relating to the back pay dispute? First, the plaintiffs' motion to further amend their Amended Complaint must be denied.[17]. Furthermore, even if I were to permit the requested amendment, it would not alter my disposition of the issues raised by the defendants' motion to dismiss. The possibility of jurisdiction under 28 U.S.C. § 1331 is reviewed later in this opinion.[18] The only new issue raised by the plaintiffs' motion to amend is their attempt to state a cause of action for negligence in the processing and final computation of back pay under 28 U.S.C. § 1346(b). That statute clearly states that it is subject to the provisions of 28 U.S.C. § 2675, which provides, in pertinent part:

(a) An action shall not be instituted upon a claim against the United States for money damage for injury or loss of property or personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have finally been denied by the agency in writing and sent by certified or registered mail.

Plaintiffs have never filed a claim for money damages to compensate them for any injury or loss occasioned by the conduct of the defendants with the Bureau or with the Department of Treasury. See 28 C.F.R. § 14.2 (1975); accord *Bialowas v. U. S.*, 443 F.2d 1047 (3d Cir. 1971). Therefore, since the filing of such a claim is a prerequisite to jurisdiction under 28 U.S.C. § 1346(b), an allowance of a further amendment to the Amended Complaint would be to no avail.

## FAILURE TO GIVE MIRANDA WARNINGS

Despite their failure to exhaust administrative remedies prior to filing a damage action arising from the award of back pay, have the plaintiffs stated a separate valid cause of action based on the purported failure of defendants Delaney, Farrell and Green to give plaintiffs *Miranda* warnings prior to interrogation? In their pleadings and depositions plaintiffs have plead with specificity their reliance on the "Miranda rule and the cases following."[19] As I view

17. Under Rule 15(a) of the Federal Rules of Civil Procedure, a party may amend his complaint once as a matter of right prior to the filing of a responsive pleading by his opponent. The original Complaint and the Answer were filed in this action more than three years ago. Therefore, absent written consent from defense counsel, the plaintiffs may amend their complaint only with the consent of this Court. The plaintiffs have already filed one Amended Complaint in this action. Plaintiffs attempted earlier, in August, 1975, to further amend their Amended Complaint to state the statutory basis for jurisdiction; plaintiffs included a request for leave to amend in the body of their memorandum in opposition to a motion to dismiss. Now, once again, the plaintiffs request an opportunity to further amend their Amended Complaint, not only to state the grounds for jurisdiction, but also to include an allegation of negligence on the part of the federal officers with jurisdiction averred under 28 U.S.C. § 1346(b), the Federal Tort Claims Act. Defendants rightfully object to these tardy attempts to amend. It is clear that these re-

quests were made in response to the defendants' brief and argument in support of their motion for summary judgment. Plaintiffs have waited nearly one and one-half years to file for leave to amend—more than three years after the original complaint was filed. The proposed amendments include no critical facts outside of the knowledge of the plaintiffs before the completion of discovery. There are no factors which persuade this Court that leave to amend should be granted. cf. *Eisenmann v. Gould-National Batteries, Inc.*, 169 F.Supp. 862 (E.D.Pa. 1950).

18. See Text, infra, at 359, n.19.

19. Plaintiffs' Amended Complaint, ¶ 8, at 3. The Amended Complaint did not include any statement of the statute upon which the Court's jurisdiction depended, in clear disregard of Rule 8(a)(1) of the Federal Rules of Civil Procedure. Despite plaintiffs' failure to recite the correct jurisdictional provision in the Amended Complaint, it is clear that the plead-

their complaints and briefs the plaintiffs are relying solely on a *Miranda* rationale.[20]

At the outset, it must be noted that plaintiffs seek to extend the *Miranda* warnings to an area where no court has yet held they were applicable.[21] Plaintiffs here are civil litigants. They are not defendants in a criminal case seeking to suppress a confession or a statement. They have never been arrested, never indicted, and never formally charged with the violation of any criminal statute. Thus, the critical issue here becomes whether *Miranda* is applicable in a factual milieu significantly different than that which generated its birth. Only last month, in blunt terms, we were advised by Chief Justice Burger that "the dynamics of constitutional interpretation do not compel constant extension of every doctrine announced by the Court." *United States v. Mandujano*, 425 U.S. 564, 580, 96 S.Ct. 1768, 1778, 48 L.Ed.2d 212 (1976). Should such an extension be made here for plaintiffs?

The setting in *Miranda* was quite different; its rationale suggests that, even in some criminal cases, the failure to give *Miranda* warnings will not be a constitutional violation. For the Supreme Court has held, in a series of criminal cases, that confessions obtained without *Miranda* warnings may be utilized in the cross-examination of defendants who take the stand.

*Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). Plaintiffs here should have no greater rights in their civil case than Harris had when the Court sanctioned his conviction—even though the finding of guilt may have been triggered by use of a statement secured without a *Miranda* warning. When cut to its essence, *Miranda* is a prophylactic process; the policy considerations were enunciated quite clearly by the late Chief Justice Warren:

> . . . the constitutional foundation underlying the privilege is the respect a government—state or federal—must accord to the dignity and integrity of its citizens. To maintain a "fair state—individual balance," to require the government "to shoulder the entire load", [in a criminal prosecution] (citation omitted) . . . our accusatory system of criminal justice demands that the government seeking to punish an individual produce the evidence against him by its own independent labors, rather than by the cruel, simple expedient of compelling it from his own mouth. (citation omitted)

*Miranda, supra*, 86 S.Ct. at 1620. The *Miranda* warnings were designed to obviate the abuse that concerned the Court with respect to the prosecutor's case in chief. That abuse was the possibility that through mental or physical compulsion, trickery, or the like, *a criminal defendant* would provide

---

ing averred sufficient operative facts to attempt to vest jurisdiction in this Court under 28 U.S.C. § 1331, *i. e.* a cause of action "arising under the Constitution . . . of the United States." See *Chasis v. Progress Manufacturing Co.*, 382 F.2d 773 (3d Cir. 1967); *Safeguard Mut. Ins. Co. v. Commonwealth of Pa.*, 372 F.Supp. 939, 947 (E.D.Pa.1974).

**20.** There are some vague references in the Amended Complaint to certain other constitutional violations. Although it has been alleged that the plaintiffs were advised that they must answer all questions and remain present during the interrogation or "be in violation of some departmental advisory," the text of this departmental rule has not been provided by any of the parties. This total absence of specific allegations with respect to other constitutional violations fatally flaws plaintiffs' pleadings. cf. *Fletcher v. Hook*, 446 F.2d 14 (3d Cir. 1971); *Kauffman v. Moss*, 420 F.2d 1270, 1275 (3d

Cir.), cert. denied, 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970); *Negrich v. Hohn*, 379 F.2d 213, 215 (3d Cir. 1967); *Everett v. City of Chester*, 391 F.Supp. 26, 29 (E.D.Pa.1975).

**21.** Every case brought to this Court's attention, where it was determined that *Miranda* warnings should have been given, involved a post-conviction challenge to the admissibility of certain statements of the accused at his trial. See, e. g., *U. S. v. Jaskiewicz*, 433 F.2d 415 (3d Cir. 1970), where the appellant, convicted of attempted tax evasion, questioned the admissibility of statements solicited from him in the course of a civil tax investigation without prior warnings; *Steigler v. Anderson*, 496 F.2d 793 (3d Cir. 1974), in which a prisoner, convicted of first degree murder, filed a habeas corpus petition in which he challenged the admissibility of his statements made prior to being advised of his right to remain silent.

sufficient evidence out of his own mouth to be found guilty beyond a reasonable doubt by the trier of fact. As part of its case in chief, the Government must come forward with independent evidence of the accused's guilt sufficient to uphold its burden of proof. These plaintiffs are not criminal defendants.

■ The ultimate impact of plaintiffs' position means that any employer who questions his employees about suspicious events runs the risk of civil liability unless there has been meticulous compliance with the litany of warnings required under *Miranda.* Maybe on some distant day in this Bicentennial era the pendulum for the rights of individuals will swing that far. But at this hour, employers and their representatives still have some rights of inquiry about suspicious occurrences—one present right is that neither the employer nor his agents are liable civilly for damages when *Miranda* warnings are not given and where criminal prosecution is never initiated.[22]

### CONCLUSION

The defendants' motion to dismiss or in the alternative for summary judgment is GRANTED. The plaintiffs' motion to amend their Amended Complaint is DENIED. Plaintiffs must exhaust their administrative remedies before renewing their conspiracy claim for failure to remit back pay in this district court.

---

**22.** Since I have concluded that the plaintiffs have failed to state a cause of action for damages based on *Miranda*, I need not consider defendants' objection to such a cause of action on the grounds that it is barred by the doctrine of official immunity.